**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Luis F. MELENDEZ–RODRIGUEZ,**
**Appellant.**

Superior Court of Pennsylvania.

Argued March 2, 2004.

Filed Aug. 24, 2004.

Andrea E. Mertz, Public Defender, Reading, for appellant.

Kelly S. Kline, Asst. Dist. Atty., Reading, for Commonwealth, appellee.

Before: DEL SOLE, P.J., FORD ELLIOTT, STEVENS, ORIE MELVIN, LALLY–GREEN, TODD, GANTMAN, McCAFFERY, and PANELLA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Luis F. Melendez–Rodriguez, appeals from the judgment of sentence entered by the Court of Common Pleas of Berks County after his convictions by a jury of Criminal Attempt to Commit Criminal Homicide; Criminal Attempt to Commit Murder in the First Degree; two counts of Aggravated Assault; two counts of Simple Assault; Recklessly Endangering Another Person; Kidnapping; Unlawful Restraint; Terroristic Threats; Possessing Instrument of Crime; Persons Not to Possess Firearms; and Firearms Not to be Carried Without a License.[1] On appeal, Appellant asserts trial court error in denying his motion to sever Count 14 (relating to Persons Not to Possess Firearms) and motion for mistrial. Additionally, he challenges the admission into evidence of color photographs of the victim's wounds. After careful review, we affirm.

¶ 2 In an opinion filed on October 21, 2002, the trial court aptly provided the background of this case as follows:

In the early morning hours of December 11, 2001, the [Appellant], Luis Felipe Melendez–Rodriguez, kidnapped his ex-girlfriend and riddled her body with bullets shooting her in the back of the head execution style and chasing her down to shoot her another four (4) times: in the chest, back, buttocks, and leg at close range. Earlier, the [Appellant] arrived at the victim's house saying that he was tired and needed to sleep and eat. The [Appellant] told her not to call the cops, because she had a Protection from Abuse Order against him. She let him in, for reasons known only to her. Once the [Appellant] had weaseled his way into the apartment, he accused her of cheating on him, went through her closets, and checked the basement to see if there was anyone else in the house with her. The only other person in the house was the victim's twelve (12) year old son, who was sleeping in his bedroom upstairs.

The victim went to her bed to lay [sic] down. The [Appellant] came into her bedroom and again accused her of cheating on him. The victim swore at the [Appellant] and called him names. The [Appellant] pulled out a gun and put it to the victim's head, saying, "I'm going to kill you, shut up, shut up." The victim kicked the [Appellant] and a physical struggle followed, knocking the gun away from the [Appellant]. The [Appellant] choked the victim until she blacked out. She awoke with a pillow and the gun to her head. The [Appellant] told her to come with him or he would shoot her, and her son, Alex, would wake up. The [Appellant] made her get dressed and go out to her car. The [Appellant] then instructed her to drive through parts of the City of Reading, County of Berks, Pennsylvania. The [Appellant] threatened to shoot the victim if she did anything to draw attention to them as they passed a police car. The [Appellant] made the victim pull the car over so that they could switch seats. Then the [Appellant] drove toward the 400 block of Riverfront Drive. The vic-

1. 18 Pa.C.S.A. §§ 901(a)(2501(a)); 901(a)(2502(a)); 2702(a)(1) & (4); 2701(a)(1) & (3); 2705; 2901(a)(3); 2902(a)(1); 2706(a)(1); 907(a); 6105(a); and 6106(a), respectively.

tim tried to jump out of the car and under a moving truck to get someone's attention, but she was unsuccessful. There was a struggle between the [Appellant] and the victim. Then the [Appellant] pressed the gun against the back of the victim's head and shot her, execution style.

After the shot grazed her head, the victim opened the passenger side door and rolled out of the moving car and onto some train tracks. She ran to a tractor-trailer, which was parked along the side of the road, and crawled up into the passenger side of the truck cab. The [Appellant] did a U-turn and crashed the victim's car into the side of the tractor-trailer. The [Appellant] climbed into the driver's side door of the tractor-trailer cab as the victim struggled to lock it. The [Appellant] pressed the gun against the left side of the victim's chest and shot her. The bullet bounced off the wall of her chest and went through her breast. The victim curled into a fetal position as the [Appellant] fired three (3) more shots into her lower back, buttocks, and thigh. The [Appellant] left the victim to bleed to death in the cab of the truck.

The victim-thinking only of the safety of her son-pulled herself out of the truck and attempted to walk home. A car passed and the victim tried to get help, but the driver of the car drove off, apparently scared by her bloody, mangled appearance. Finally, the driver of the tractor-trailer returned from a nearby business and noticed a car crashed into his truck. He saw the victim not too far from the truck and immediately called the police from his cell phone. The victim was med-evaced by helicopter and treated for her injuries. Miraculously, she lived.

The [Appellant] was arrested and charged with Criminal Attempt to Commit Criminal Homicide; two (2) counts of Aggravated Assault; Kidnapping; Firearms Not to be Carried Without a License; Unlawful Restraint; Terroristic Threats; Possessing Instrument of a Crime; three (3) counts of Simple Assault; Recklessly Endangering Another Person; Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms; Criminal Attempt to Commit Murder of the First Degree; and Criminal Attempt to Commit Murder in the Third Degree.

\*     \*     \*     \*     \*     \*

Following arraignment, the [Appellant] filed a Motion to Sever the count of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms. The Motion to Sever was denied following brief oral argument and memoranda on the issue. On March 27, 2002, the Commonwealth filed a Notice of Intention to Present Evidence of Other Crimes, Wrongs or Acts under Pennsylvania Rule of Evidence 404(b).

\*     \*     \*     \*     \*     \*

The two (2) day jury trial commenced on June 3, 2002. At trial, the Commonwealth withdrew Count 7, Simple Assault, and Count 3, Criminal Attempt to Commit Murder of the Third Degree.

\*     \*     \*     \*     \*     \*

Following ... trial, the [Appellant] was convicted of all remaining charges. Sentencing was deferred until Friday, June 14, 2002. At sentencing, the [Appellant] was sentenced to twenty (20) to forty (40) years for Count 2, Criminal Attempt to Commit Murder in the First Degree; ten (10) to twenty (20) years for Count 10, Kidnapping to run consecutively to Count 2, but concurrently with the sentence of thirty (30) to (60) months for Count 12, Terroristic Threats; and sentences for Counts 13, Possessing Instrument of a Crime; Count 14, Persons Not to Possess a

Firearm; and Count 15, Firearms Not to be Carried Without a License, were imposed to run concurrently with each other, but consecutive to counts 2, 10, and 12, adding an additional five (5) to ten (10) years to the aggregate sentence. Thus, the [Appellant] was sentenced to a total period of incarceration of thirty-five (35) to seventy (70) years. [This appeal followed.]

Trial Court Opinion, 10/21/02, at 1–6.

¶ 3 Appellant presents the following three questions for our review:

A. Did not the trial court err in denying Appellant's motion to sever Count 14 of the Information (i.e. Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms) when evidence of Appellant's prior conviction was highly prejudicial and not relevant to prove intent, identity, motive or common scheme, so that under the rule established by *Commonwealth v. Galassi*, 296 Pa.Super. 126, 442 A.2d 328, 330 (1982), the Count should have been tried separately?

B. Did not the trial court err in denying Appellant's motion for a mistrial when the Complaining Witness shouted aloud invectives against Appellant before the jury during defendant's testimony?

C. Did not the trial court err in admitting into evidence over objection large color photographs of the Complaining Witness's wounds, when the probative value of such evidence was outweighed by the inflammatory nature of the depictions so that the passions of the jury were inflamed causing their opinions to

be unduly prejudiced against the defendant?

Appellant's brief, at 7. We shall address these issues in the order presented.

■ ¶ 4 Appellant first asserts that the trial court erred in refusing his motion to sever the offense of violating 18 Pa.C.S.A. § 6105[2] from the remaining charges because the evidence regarding a prior aggravated assault by Appellant upon this same victim was unduly prejudicial. We disagree.

■ ¶ 5 "[A] motion for severance is addressed to the sound discretion of the trial court, and ... its decision will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Jones*, 530 Pa. 591, 602, 610 A.2d 931, 936 (1992). The critical consideration is whether appellant was prejudiced by the trial court's decision not to sever. *Commonwealth v. Lopez*, 559 Pa. 131, 160, 739 A.2d 485, 501 (1999); *see also Commonwealth v. Carroll*, 275 Pa.Super. 241, 418 A.2d 702, 704 (1980) (stating "Our determination of whether the lower court properly exercised its discretion in refusing the appellant's motion to sever rests on whether appellant was unduly prejudiced by this failure."). Appellant bears the burden of establishing such prejudice. *Lopez, supra.* Rule of Criminal Procedure 583 establishes the substantive standard for severance of offenses, and states in pertinent part:

**Rule 583. Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any

---

**2.** § 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms

(a) OFFENSE DEFINED.—

(1) A person who has been convicted of an offense enumerated in subsection (b) [aggravated assault is one such enumerated offense],

within or without this Commonwealth, ... shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583, 42 Pa.C.S.A.

¶ 6 Additionally, we observe that the Pennsylvania Supreme Court has reiterated the appropriate three-part test under this rule:

the court must ... determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins,* 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (quoting *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 496–97 (1988)).

¶ 7 Clearly, with respect to the charge of violating § 6105 of the Crimes Code the Commonwealth must introduce evidence of a prior conviction as an element of its proof of the crime. It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. *Commonwealth v. Boyle,* 733 A.2d 633, 636 (Pa.Super.1999). This rule is not without exception, however. Evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. *Id.* It is well-established that reference to prior criminal activity of the accused may be introduced where relevant to some purpose other than demonstrating defendant's general criminal propensity. Thus, evidence of other crimes may be introduced to show

1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances."

*Commonwealth v. Reid,* 571 Pa. 1, 35, 811 A.2d 530, 550 (2002) (citations omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003).

¶ 8 Instantly, the trial court permitted the victim to testify that Appellant had previously assaulted her in 1996. She indicated that Appellant was convicted of beating her with a baseball bat causing her to sustain a broken left arm and 23 stitches to the right side of her head. N.T. Trial, 6/3–4/02, at 33–34. This testimony was offered in explanation of her response to the prosecutor's question about what she and the Appellant had discussed in the car prior to her being shot. Specifically, the following exchange occurred:

Q. What happened after you turned onto 7th?

A. He directed me to Willow Street. He told me to park.... We parked. I was still driving, and he was still in the passenger seat. That's when he said, let's talk. We started talking. He—he started talking without making sense to me because whatever he was telling me, it wasn't true. So to me it just didn't make sense. He mentioned that I was with somebody. He kept telling me,

who are you with. Tell me who you are with. Why are you cheating on me.

Q. What did you say to him when he said that?

A. I told him that I loved him and that I would never cheat on him and that I have forgave [sic] him for beating me up.

Q. What are you referring to Leonilda?

A. To a beating that I received from him in 1996.

* * * * * *

Q. Okay. Now, you said he was referring to that, and how, again, was he referring to that?

A. He was referring to that as that I was trying—when he did that in 1996, he had cheated on me. And he was saying that I was going to get back at him and that I sent two guys to shoot at him the week prior to December 11th. And he also said that I never forgave him. And, again, I kept telling him of how much I loved him and that I forgave him and that I would never hurt him. And he kept saying that—that I was a liar and pointed the gun at me and telling me to shut up.

*Id.* Additionally, the Commonwealth subsequently offered into evidence Exhibit # 16 consisting of two pages of the sentencing sheet from that 1996 conviction. *Id.* at 79–81.

¶ 9 Appellant submits that the offense of violating 18 Pa.C.S.A. § 6105 must be severed unless the Commonwealth can show admissibility pursuant to Pa.R.E. 404(b)(2), 42 Pa.C.S.A. He argues that the exceptions noted in Rule 404(b)(2) are inapplicable to the facts of this case, and, even if applicable, the probative value of the prior conviction does not outweigh its potential for prejudice pursuant to 404(b)(3). Appellant cites to *Carroll, supra, Galassi, supra* and *Commonwealth v. Neely,* 298 Pa.Super. 328, 444 A.2d 1199 (1982), (*overruled on other grounds in Commonwealth v.*

*Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983) (*en banc*)), to support his arguments.

¶ 10 In *Carroll,* the jury convicted the defendant of recklessly endangering another person, disorderly conduct, possession of a prohibited offensive weapon, and two violations of the Uniform Firearms Act. Prior to trial, the defendant in *Carroll* moved to sever the charge of former convict not to own a firearm (the prior version of § 6105) from the other charges. The trial court denied the motion. On appeal, this Court held that the trial court had committed reversible error. *Carroll,* 418 A.2d at 705. We explained that the defendant's former crime did not satisfy any of the Rule 404(b) exceptions, stating:

Here, we are presented with a crime which, as part of the proof, requires proof that the appellant had previously committed a violent crime. Clearly the fact that appellant committed the former violent crime, is of no evidentiary value to the proof of any of the other crimes with which he is so charged; its only relevance is to satisfy the requirements of "Former convict not to own a firearm."

This being the case, we see no justification for refusing the severance requested by appellant. Clearly, the consolidated trial of these above enumerated offenses severely prejudiced appellant in that the jury was exposed to the proof that appellant had formerly committed a violent crime.

*Id.* 418 A.2d at 704–705.

¶ 11 Similarly, in a prosecution on two charges of violating the Uniform Firearms Act, to wit: former convict not to own a firearm (former version of 18 Pa.C.S.A. § 6105) and firearms not to be carried without a license (18 Pa.C.S.A. § 6106), this Court in *Galassi, supra,* applied the analysis of *Carroll* and held that sound

judicial discretion required severance of the count charging the defendant's status as a previously-convicted criminal in possession of a firearm where the fact of the defendant's prior conviction was not logically relevant to the other charge, and there was potential for abuse arising from the fact finder's knowledge of the defendant's alleged criminal disposition.

¶ 12 Once again, in *Neely, supra,* we applied the rationale of *Carroll* and held that the trial court should have granted the defendant's motion to sever the charge of former convict not to own a firearm from the other charges of attempted robbery and aggravated assault because there were no exceptions raised to its general inadmissibility. Specifically, we noted:

> The Commonwealth does not suggest that the evidence of appellant's prior convictions of burglary, larceny, and receiving stolen property was in any way relevant to its proof that appellant committed aggravated assault and attempted robbery. Instead it argues that *Carroll* should not be followed in deciding this case because it "was not made retrospective." Brief for Commonwealth at 3. The argument is without merit. It is true that *Carroll* had not been filed when this case was tried. *Carroll* did not, however, make new law but applied settled principles. It therefore applies to this case, and to all cases still to be tried or tried but pending on appeal when it was filed; no issue of retrospective effect is presented.

*Neely,* 444 A.2d at 1208.

¶ 13 In this case, unlike *Carroll, Galassi* and *Neely,* the trial court found that Appellant's prior conviction fell within one of the exceptions of Pa.R.E. 404(b). The trial court addressed this issue as follows:

> Here, the evidence of the prior assaults would have been admissible to establish appellant's motive in committing the at-

tempted murder and to show the history and natural development of the facts. Even if the count was severed, evidence of the prior assault on the victim would have been admissible and that decision on the admission of evidence would be within the sound discretion of the trial court and would not be disturbed absent an abuse of that discretion. Clearly the denial of a motion for severance is not an abuse of discretion if the facts and elements of the two (2) crimes are easily separable in the minds of the jurors and if the crimes are such that the fact of commission of each crime would be admissible as evidence in a separate trial for the other. Such is the case in the instant matter. Even if the Defendant had not been charged with Persons Not to Possess a Firearm, testimony about the Defendant's prior assault on the victim would have been admissible to show motive of the Defendant and the natural development of the facts in the case. When the Defendant kidnapped and terrorized the victim, he told her that he would kill her because she was seeing someone else to get him back for the assault with a baseball bat that occurred years before. The Defendant also said that she sent two (2) men to shoot him for the prior assault. Further, the prior assault shows evidence of the Defendant's malice or ill will toward the victim, which was part of the natural development of their ten (10) year relationship.

The probative value of evidence of the prior Aggravated Assault by the Defendant on the victim outweighs the prejudice to the Defendant because it is extremely relevant for the following reasons: to establish motive and intent, because he used it to threaten and/or intimidate the victim, because it shows the history and development of the relationship between the Defendant and

the victim, and because it was part of the discussion between the victim and the Defendant at the time of the commission of the instant crimes. Therefore, the Defendant's first allegation of error is meritless.

Trial Court Opinion, 10/21/02, at 12–13 (citations omitted).

¶ 14 After a thorough review of the record and the applicable law, we agree with the trial court's analysis and adopt it as our own. We also note that Appellant was charged with simple assault, terroristic threats and kidnapping. In order to prove simple assault the Commonwealth may establish that the defendant intended to place the victim "in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). As for terroristic threats and kidnapping, these crimes may be established by proof that the defendant intended to terrorize the victim. See 18 Pa.C.S.A. §§ 2706(a)(1) and 2901(a)(3). Thus, the testimony that Appellant had previously assaulted the victim with a deadly weapon is part of what made it possible for him to terrorize her instantly. Also, such evidence, at least in part, tends to establish Appellant's *mens rea* in that he knew that his actions in showing up at the victim's residence in the very early hours on the morning December 11, 2001 would accomplish the intended result to terrorize her.[3] Accordingly, we find that the trial court did not abuse its discretion in deciding that the evidentiary value of said evidence outweighed its potential for prejudice because the evidence was relevant and established Appellant's motive, intent, and the history of this turbulent relationship. See *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct.

2284, 156 L.Ed.2d 137 (2003) (holding that the trial court did not clearly abuse its discretion in admitting evidence of four PFA orders obtained by victim against defendant, the earliest of which dated back thirty-four months, in a first-degree murder case. Evidence properly used to demonstrate the chain or sequence of events that formed the history of the case and Defendant's motive, malice, intent, and ill-will); *see also Commonwealth v. Scarfo*, 416 Pa.Super. 329, 611 A.2d 242, 270–271 (1992), *appeal denied*, 535 Pa. 633, 631 A.2d 1006 (1993) (finding that evidence of a prior beating of victim with a pipe and baseball bat was properly introduced to show history of the relationship, animosity, resentment, and ill will, which is relevant to show motive in a homicide).

¶ 15 Appellant next complains that the victim's momentary outburst during his testimony required a mistrial. While the Appellant was testifying that he told the victim, "if you're not going to tell me the truth then I'm going to threaten to kill you. I don't know what it was what my intentions were, but they were not——," he was interrupted by an outburst from the victim. N.T. Trial, 6/4/02, at 124. Although not recorded by the court reporter in the notes of testimony, the trial court recalls that the victim "stood up and screamed, 'You gunned me down like an animal' and other words to that effect." Trial Court Opinion, 10/21/02, at 8. The victim was immediately escorted from the courtroom. The trial judge denied the requested mistrial and gave the following cautionary instruction to the jury.

All right [sic]. Ladies and gentlemen of the jury, I apologize for the disruption. As I told you earlier before we started the entire trial the only evidence that

---

**3.** Additionally, we note that there was other evidence of the parties' violent relationship, admitted into evidence without objection, in the form of a protection from abuse order the victim had obtained against the Appellant, thus, lessening the potential prejudice from admission of the prior conviction.

you can consider is what you hear from the witness on the witness stand. You are to disregard anything that you may have heard the person say back there in the courtroom during the outburst. This is not testimony. It's not to be considered by you in any way. It's not to have any influence on your evaluation of the testimony from all of the witnesses and you are to give it absolutely no consideration during your deliberations. Is that understood by everyone? The record should indicate that all the jurors have nodded yes in agreement. Thank you.

N.T. Trial, 6/4/02, at 124–25.

¶ 16 "Whether to grant the extreme remedy of a mistrial is a matter falling into the discretion of the trial court." *Commonwealth v. Boczkowski*, 577 Pa. 421, 453–55, 846 A.2d 75, 94–95 (2004). "A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." *Id.* (quoting *Commonwealth v. Jones*, 542 Pa. 464, 488, 668 A.2d 491, 502–503 (1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996)).

¶ 17 Presently, the trial court addressed this issue by concluding that this isolated comment combined with the immediate curative instruction did not sufficiently prejudice Appellant so as to deny him a fair trial. We agree with the trial court's determination that the jury's momentary exposure to the victim's irrelevant outburst did not have the unavoidable effect of depriving Appellant of a fair and impartial trial. Any prejudice to Appellant was effectively cured by the court's immediate cautionary instructions. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001), *cert. denied*, 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003); *see*

*also, Commonwealth v. O'Hannon*, 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) (stating "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions."). Moreover, the victim's outburst did not add anything new to her version of the events that she had previously testified to upon direct examination. Therefore, we conclude the trial court properly denied Appellant's motion for a mistrial.

¶ 18 Appellant's final claim asserts that the trial court erred in admitting large color photographs of the victim's wounds because they were inflammatory and prejudicial. However, the record reflects that Appellant's trial counsel never objected at trial or in any pre-verdict motion to the admissibility of these photographs. Instead, he raised this issue for the first time in a 1925(b) statement after he filed his notice of appeal, and the trial court addressed the issue in its 1925(a) opinion. Nonetheless, it is well established that absent a contemporaneous objection the issue is not properly preserved on appeal. *Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551, 555 (1996) (*en banc*), appeal denied, 549 Pa. 699, 700 A.2d 439 (1997); *see* Pa.R.A.P. 302(a), 42 Pa.C.S.A. (providing that issues which were not raised before the trial court are waived and may not be raised for the first time on appeal); *see also, Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super.2003) (finding that because Watson never challenged his guilty plea or the discretionary aspects of his sentence in the trial court before raising them in his Rule 1925(b) statement the issues were waived).

¶ 19 In an effort to avoid waiver, Appellant cites to *Commonwealth v. Miller*, 765 A.2d 1151 (Pa.Super.2001), for the proposition that because the trial court overlooked the issue not being raised or objected to and addressed the claim in its opinion, this Court is obligated to do likewise. Appel-

lant's brief, at 24. Specifically, Appellant relies on the following discussion in *Miller*:

Appellant next claims that the sentencing statute, 18 Pa.C.S.A. § 7508, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Pa.R.A.P. 2117(c) and 2119(e) require appellant to state in both the "Statement of the Case" and the "Argument," the specific portion of the record ·where the issue was preserved for appeal. Appellant's brief does not comply with these requirements. Further, upon review of the record, we find no objection by appellant's counsel to the constitutionality of the sentencing guidelines during the sentencing hearing. Thus, appellant's argument is technically waived. Because the trial court addressed appellant's claim in its opinion, this court will also review the claim. *See Commonwealth v. Perez,* 444 Pa.Super. 570, 664 A.2d 582, 585 (1995) ( [stating] "When an issue is waived for failure to comply with post-trial procedural rules but the trial court chooses to overlook the error and addresses the issue, an appellate court is bound to do likewise.").

*Miller,* at 1155 (citations to the record and brief omitted). We granted *en banc* review to examine this portion of the panel's holding in *Miller.*

¶ 20 We now find *Miller's* reliance on *Perez, supra,* as support for overlooking waiver was erroneous. *Perez* stood on a different procedural footing. In *Perez,* the trial court overlooked waiver and addressed substantive issues when the defendant failed to file post-verdict motions, which were at that time required. In *Perez,* this Court stated:

Before addressing the merits of Perez's claims, we must consider the effect of his failure to file post-verdict motions. Because Perez was found guilty in June of 1993, Rule 1123 required that he pre-

serve any issues for appeal by first submitting them to the trial court in a post-verdict motion. Perez's weight and sufficiency arguments are therefore technically waived.

Even so, the trial court chose to address the issue of sufficiency of the evidence. When an issue is waived for failure to comply with post-trial procedural rules but the trial court chooses to overlook the error and addresses the issue, an appellate court is bound to do likewise. We therefore will consider Perez's claim that his murder verdict was not supported by sufficient evidence.

*Perez,* at 584 (citations and footnote omitted). Thus, the viability of *Perez* in this regard ceased upon the change in our Rules of Criminal Procedure making post-sentence motions optional with the exception of weight of the evidence and discretionary sentencing claims. *See* Pa.R.Crim. P., Rules 720(B), 606(A)(7) and 607(A), 42 Pa.C.S.A. Additionally, *Perez* in overlooking waiver relied on the civil case of *American Association v. Casualty Reciprocal Exchange,* 527 Pa. 59, 67, 588 A.2d 491, 495 (1991), where the trial court, *while it still had jurisdiction,* overlooked the failure to properly preserve the issue in a pre-trial motion and addressed the issue after it was raised for the first time in post-trial motions.

¶ 21 Moreover, *Perez* did not concern the failure to make an objection at trial and an attempt to preserve the issue by inserting it into a Pa.R.A.P.1925(b) statement. As we explained in *Commonwealth v. Kohan,* 825 A.2d 702, 706 (Pa.Super.2003), "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order."

Only issues that are properly raised and preserved in the trial court may be considered on appeal. Pa.R.A.P. 302(a). Issues raised before or during trial are properly preserved for appeal. Pa.

R.Crim.P. 720(B)(1)(c). So are issues raised in a timely optional post-sentence motion, provided those issues were properly preserved at the appropriate point in the proceedings. Pa.R.Crim.P. 720(B). For example, a criminal defendant could not assert a claim in a post-sentence motion for a new trial that evidence was erroneously admitted during his trial if he hadn't lodged an objection during the trial when the evidence was admitted. Failure to object results in a waiver of the claim.

*Id.* at 705–706.

¶ 22 Consequently, to the extent that *Miller* or *Perez* can still be read as authority for overlooking a party's failure to make a timely and specific objection to the admission of evidence at trial and subsequently preserve the issue for appellate review by including it in a 1925(b) statement to which the trial court responds, their rationale for overlooking waiver is disavowed.

¶ 23 Judgment of sentence affirmed.