J-S53025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL RAY JAMES, | |
| Appellant | No. 318 WDA 2014 |

Appeal from the Judgment of Sentence of February 6, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000939-2013

BEFORE:  DONOHUE, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                     **FILED NOVEMBER 10, 2014**

Appellant, Michael Ray James,[1] appeals from the judgment of sentence following his jury trial convictions for two counts each of possession with intent to deliver a controlled substance (PWID) and possession of a controlled substance, and one count each of endangering the welfare of a child, possession of drug paraphernalia, and conspiracy.[2]  We affirm.

The trial court set forth the facts and procedural history of this case as follows:

---

[1]  Appellant was tried jointly with his co-defendant, Deshuna Crosby.  Crosby is currently appealing her judgment of sentence in a companion case, 231 WDA 2014.

[2]   35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 18 Pa.C.S.A. § 4304, 35 P.S. § 780-113(a)(32), and 18 Pa.C.S.A. § 903, respectively.

*Retired Senior Judge assigned to the Superior Court.

On February 12, 2013, Appellant and a co-conspirator, De'Shuna Crosby, were found by the U.S. Marshall's Fugitive Task Force in Room 327 of the Wyngate Hotel in Summit Township[, Pennsylvania]. The Task Force was serving an arrest warrant on Appellant after receiving a tip that he was at the hotel.

When the Task Force arrived to serve the arrest warrant, the officers knocked and announced their presence. After a few minutes, Appellant answered the door, stepped into the corridor and was placed in handcuffs.

Still inside the hotel room were Crosby and her four-month old infant. Appellant claims to be the infant's father. The officers directed Crosby to step into the hallway. Crosby initially ignored the request, walked back into the room, picked up [a] car seat with the infant [inside of it], a baby bag and a coat. Crosby then exited the room.

Crosby was asked whether she had anything illegal or any weapons. Crosby denied possession of anything illegal or having weapons and voluntarily began emptying her pants' pockets. The officers asked her if they could search the car seat. Crosby consented and lifted the baby from the car seat. In the car seat, the officers found three baggies of white and/or tan substances later identified as 53.6 grams of heroin and 128.9 grams of cocaine. There were two plastic bags of cocaine and one plastic bag of heroin.

When Appellant realized the drugs were discovered, he exclaimed, "-- those aren't hers. They're mine. That's not hers. It's mine." At trial [following the denial of Appellant's motion to suppress evidence], Appellant testified that he knew the drugs were in the room and admitted that he was in possession of the drugs. Appellant admitted to being a drug dealer of marijuana.

Upon a search of Crosby's person, the police found almost $2[,]600.00 hidden inside Appellant's bra. Crosby was unemployed. In fact, Crosby was in the Erie County Prison Work Release Program and only had permission to leave to apply for jobs on that day.

A digital scale used for weighing drugs and plastic baggies used for packaging drugs were found in plain view in the hotel room on top of the microwave. No drug paraphernalia for immediate use of the drugs was found in the hotel room or on Appellant or Crosby. Appellant and Crosby denied using the drugs which were found and denied possessing any paraphernalia for drug usage. There was no evidence in the room to suggest that other people had been there using drugs.

Appellant filed an [o]mnibus pre-trial [m]otion which was denied by the Honorable Judge Ernest DiSantis by [o]rder [on] September 30, 2013. After a [joint] jury trial [with co-conspirator Crosby] on November 12th and 13th, 2013, Appellant was found guilty [of the aforementioned charges].

\*      \*      \*

Appellant was sentenced on January 10, 2014, as follows:

Count 1: Conspiracy/[PWID]: 48 to 96 months of incarceration concurrent with Count 2, a sentence in the mitigated range;

Count 2: [PWID cocaine]: mandatory minimum of 48 to 96 months [] of incarceration consecutive to Count 5;

Count 3: Endangering the Welfare of a Child: 9 to 18 months of incarceration consecutive to Count 2, a sentence in the mitigated range;

Count 4: Possession of Drug Paraphernalia: 6 to 12 months of incarceration concurrent with Count 2;

Count 5: [PWID heroin]: mandatory minimum [] of 5 [to] 10 years of incarceration consecutive to Docket Number 930 of 2013;

Count 6: Possession of a Controlled Substance [(heroin)]: Merged with Count 5;

Count 7: Possession of a Controlled Substance [(cocaine)]: Merged with Count 2.

On January 21, 2014, Appellant filed a [m]otion for [r]econsideration of [s]entence or [s]entence [m]odification which was denied by [o]rder on February 6, 2014.

On February 20, 2014, Appellant filed a [n]otice of [a]ppeal [challenging] the [o]rders [dated] September 30, 2013, January 10, 2014 and February 6, 2014. Appellant filed a [Pa.R.A.P.] 1925(b) [c]oncise [s]tatement of [errors] [c]omplained of on [a]ppeal on March 7, 2014, and an [a]mended [Rule 1925(b) statement] on March 14, 2014.

Trial Court Opinion, 3/25/2014, at 1-3 (record citations omitted).[3]

On appeal, Appellant presents the following issues for our review:

A. Whether the suppression court [erred] when it refused to suppress the items found in the car seat, holding Appellant's child, following a warrantless search?

B. Whether the trial court [erred] in [its] pre-trial ruling to allow the Commonwealth's use of Appellant's prior testimony indicating that he was a marijuana dealer?

Appellant's Brief at 4 (superfluous capitalization omitted).

In his first issue presented, Appellant argues that the suppression court erred by failing to suppress the physical evidence obtained by police. *Id.* at 11-15. More specifically, Appellant asserts that he had a reasonable expectation of privacy in the baby car seat. *Id.* at 11-12. Appellant claims that the trial court erred by finding "the search was still permissible as either

---

[3] Judge William R. Cunningham authored the March 25, 2014 opinion. On March 28, 2014, Judge Ernest J, DiSantis, Jr. authored a supplemental opinion pursuant to Pa.R.A.P. 1925(a) addressing Appellant's suppression issue, because he presided over Appellant's omnibus pretrial motions.

'consented to' by [] Crosby, a 'search incident to a lawful arrest' of [] Crosby, or pursuant to the 'inevitable discovery doctrine.'" *Id.* at 12. Appellant argues that officers did not have reasonable suspicion at the time of the car seat search and that when Crosby took the baby out of the carrier at the request of police, "[t]hose actions are consistent with a person believing they had no choice." *Id.* at 14. Appellant further claims that the search could not be considered as incident to the arrest of either himself or Crosby because: "1) If the supposed lawful arrest was [Appellant], he was in handcuffs and unable to reach the car seat or utilize any items contained therein; 2) If the supposed lawful arrest was [] Crosby, she was not under arrest at the time of the search, nor did the officers know she was going to be arrested at that point." *Id.* Moreover, Appellant asserts that "[e]ven if they had arrested [] Crosby before the search, no testimony was offered to even suggest that the police would have searched the car seat as a matter of course prior to turning the child over to the relative." *Id.* at 15. Finally, Appellant argues that if the search were incident to Crosby's arrest, "there [was] no justification for a warrantless searching of closed or concealed areas outside the arrestee's immediate control." *Id.*

Our standard of review of an order denying suppression motion is well-settled:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as [the prevailing party], and only so much

- 5 -

of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Landis*, 89 A.3d 694, 702 (Pa. Super. 2014) (citation omitted).

In this case, the suppression court offered a plethora of grounds to support its denial of Appellant's motion to suppress. First, the suppression court determined that Appellant had no expectation of privacy in the car seat because he had voluntarily abandoned it. Trial Court Opinion, 3/28/2014, at 6-7. The suppression court further noted that Appellant was impermissibly raising constitutional claims on behalf of his co-defendant, Crosby. *Id.* at 7. Moreover, the suppression court determined that Crosby had actual or apparent authority to voluntarily consent to search the car seat. *Id.* at 7-9. The suppression court also determined that police had probable cause to arrest Crosby because she was in violation of the terms of her work release when police found her at an unauthorized location. *Id.* at 9. Finally, the suppression court noted that, pursuant to the doctrine of inevitable discovery, after both Appellant and Crosby were arrested, the police would have discovered the narcotics hidden in the infant's car seat. *Id.*

We agree with the suppression court that under the facts established at Appellant's suppression hearing Crosby and Appellant shared joint authority over the car seat and that Crosby, through her actions, gave implied consent for the officers' search. Because we conclude that the

officers effectuated a consensual search with the permission of one who enjoyed common authority over the car seat, we hold that Appellant is not entitled to relief on his first claim.

Here, the baby car seat was in a hotel room with equal access to Appellant and Crosby. Moreover, the seat was used to transport an infant parented by both Crosby and Appellant. "The law is well-settled that a warrantless search may be made with the voluntary consent of a third party who possesses 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Commonwealth v. Gibbons*, 549 A.2d 1296, 1300 (Pa. Super. 1988) (citations omitted). "Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants [or co-possessors] has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 1301 (ellipses and citation omitted).

"[A]ctual consent, implied consent, search incident to lawful arrest, and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search." *Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa. 1994). "[T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will

overborne—under the totality of the circumstances." ***Commonwealth v. Caban***, 60 A.3d 120, 130 (Pa. Super. 2012).

Here, the evidence showed that: 1) Appellant is the infant's father; 2) after Appellant was placed in handcuffs, Crosby remained in the hotel room with the infant; 3) when asked to step into the hallway, Crosby came out with the infant, inside the car seat, and a diaper bag. The testimony of the circumstances establishes Crosby's common authority over the car seat. Thereafter, when asked if police could search her, Crosby "voluntarily began to empty her pockets" and she "voluntarily bent over, pulled the baby out and let [the officer] look at the car seat." N.T., 9/30/2013, at 9. While she did not verbally reply, Crosby's actions show implied consent. Upon review of the certified record, there is no additional evidence that Crosby was under undue police coercion or duress at the time of the search. Accordingly, the car seat was under the joint control of Appellant and Crosby and Crosby voluntarily consented to a search. Thus, the search was permissible and the suppression court properly denied relief. As such, Appellant's first issue is without merit.

In his second issue presented on appeal, Appellant claims the trial court erred by allowing the Commonwealth to present Appellant's prior testimony, in an unrelated case, wherein he admitted to selling marijuana and ecstasy. Appellant's Brief at 16-18. Appellant claims that evidence of selling marijuana and ecstasy was irrelevant to whether he possessed cocaine and heroin with intent to deliver it. ***Id.*** at 17. Further, Appellant

argues that the trial court erred in permitting the aforementioned prior act evidence, because the potential for unfair prejudice outweighed its probative value. *Id.* at 17.

On this issue, the trial court determined:

> Appellant testified on direct appeal that he possessed the drugs in question, but that he was not intending to sell them. This testimony opened the door to Appellant's prior testimony under oath at a homicide trial to being a drug dealer. Appellant cannot use his status as a drug dealer to defend a homicide charge and then later deny his testimony about being a drug dealer to defeat the present drug dealing charges. Because of the patent inconsistencies, Appellant would have been lying under oath at one of his trials. Therefore, it was permissible impeachment evidence to allow inquiry to Appellant's prior sworn testimony admitting to dealing drugs in Erie County.

Trial Court Opinion, 3/25/2014, at 8.

"It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa. Super. 2004)(citation omitted). However, this rule is not without exception:

> Evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. It is well-established that reference to prior criminal activity of the accused may be introduced where relevant to some purpose other than demonstrating defendant's general criminal propensity. Thus, evidence of other crimes may be introduced to show[:]
>
> > 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5)

> identity. **The evidence may also be admissible to impeach the credibility of a testifying defendant**; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

*Id.* (emphasis added).

Here, at the beginning of trial, the Commonwealth told the trial court that it intended to use Appellant's testimony from an unrelated trial wherein Appellant admitted to selling marijuana "in the event that [Appellant] testifie[d] … for impeachment purposes." N.T., 1/12/213, at 5-6. In this case, Appellant testified that an independent third party drug dealer rented the hotel room where police found Appellant and Crosby. *Id.* at 108. Appellant claimed that the drugs found by police were not his and he did not intend to sell those drugs. *Id.* The Commonwealth was permitted to impeach Appellant's testimony. The fact that counsel for Appellant elicited the testimony during direct examination, instead of the Commonwealth cross-examining Appellant with the prior testimony concerning marijuana sales, is a distinction without a difference. We discern no error and Appellant's second issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/10/2014</u>