J-S63029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD HUMPHREY | |
| Appellant | No. 1661 EDA 2015 |

Appeal from the Judgment of Sentence February 7, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002906-2013

BEFORE:  DONOHUE, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED NOVEMBER 06, 2015**

Appellant, Edward Humphrey, appeals from the February 7, 2014 aggregate judgment of sentence of 32 to 64 months of incarceration, followed by four years of probation, after a jury convicted him of home improvement fraud and theft by deception.[1]  After careful review, we affirm.

Appellant's two-day jury trial commenced on January 6, 2014.  Mr. Leeander Gray testified that on July 8, 2011, he entered into a contract with Appellant for home repairs, including a new roof, in the amount of $32,000.00.  N.T., 1/6-7/14, at 15-18.  Appellant advised Mr. Gray that the home repairs could be completed in seven to ten days.  *Id*. at 20.  Mr. Gray

---

[1] 73 P.S. § 517.8(a)(2) and 18 Pa.C.S.A. § 3922(a)(1), respectively.

gave Appellant $15,000.00, payable to Total Remodeling, toward the down payment. *Id*. at 22. On July 19, 2011, Mr. Gray's wife wrote a check for an additional $10,000.00 to Total Remodeling, and gave the check to Appellant. *Id*. at 25-26. Within a week, Appellant began demolition at the Grays' home. *Id*. On August 18, 2011, at Appellant's request, the Grays paid Appellant an additional $9,842.93, for a total of $34,842.93. *Id*. at 28-30. Thereafter, Appellant ceased work on the Grays' home. Mr. Gray testified, "It was basically we still had a shell of the home, the electrical wasn't done yet, the drywall needed to be hung, the carpets needed to be put back down and the painting." *Id*. at 31. Although Mr. Gray tried repeatedly to contact Appellant, he could not reach him and "gave up." *Id*. Appellant never returned to complete the work on the Grays' home, nor did he remit a refund to the Grays. *Id*. at 33, 39, 68. Mr. Gray had to hire another contractor to complete the construction. *Id*. at 44. Consequently, Mr. Gray contacted the police. *Id*. at 39.

Mr. James Reilly testified to "meeting up" with Appellant in January or February of 2011. *Id*. at 74-75. Appellant told Mr. Reilly that he could teach him how to start a windows, roofing and siding business. *Id*. at 76. At Appellant's suggestion, Mr. Reilly started a company on March 15, 2011, in Mr. Reilly's name, but "set up" by Appellant. *Id*. at 81-83. The name of the company was Total Remodeling of Northeast Pennsylvania. *Id*. at 84. Mr. Reilly explained that Appellant was "running the whole company," and

Mr. Reilly was trying to learn from Appellant. *Id*. at 86-87, 91-92. Mr. Reilly testified as follows.

> [T]here was – there came a point where [Appellant] wasn't showing up. He was disappearing for days and God knows what he was doing but then, you know, he just come back [sic] in like, you know, save the day like everything is fine. And everything wasn't fine because, you know, people were looking for him and, you know, I didn't know what to help [sic], to say to people and what was going on so—

*Id*. at 89. Mr. Reilly asked Appellant to remove Mr. Reilly's name from the Total Remodeling company and Appellant did so on June 20, 2011. *Id*. at 92.

Ms. Jennifer Tillema testified to answering Appellant's Craigslist ad for secretarial employment in May of 2011. *Id*. at 128-130. Ms. Tillema began working for Appellant and, within a few months, Appellant discussed with Ms. Tillema "becoming an owner or member in the company." *Id*. at 132. The discussion occurred "towards the end when Mr. Reilly was not around and we were trying to figure out if we could move forward and try to complete the work." *Id*. at 133. On August 2, 2011, Ms. Tillema accompanied Appellant to the bank to open an account for the company. *Id*. at 137-137. At Appellant's direction, the bank account was opened in Ms. Tillema's name, with Appellant as a "signer." *Id*. at 139, 152. By the end of August, Ms. Tillema had "very limited access" to Appellant and "just couldn't get ahold of him regularly." *Id*. at 141-142. Ms. Tillema began to conduct "due diligence" and went to the Grays' home, where she "didn't

even have to go into the home" to see that it was in poor condition. *Id*. at 142-143. At this point, Total Remodeling had "no money" to return to the Grays, and Ms. Tillema left the Grays' home "very upset." *Id*. at 144. She testified, "[t]heir home was destroyed." *Id*. at 154.

Pennsylvania State Trooper Michael Hodgskin testified to investigating the Grays' report of fraud. After hearing from Mr. Gray at the police barracks, Trooper Hodgskin went to the Grays' home, where he "observed the entire second floor basically just [un]inhabitable. It was basically under construction, framing, partial roof, no insulation, exposed wiring." *Id*. at 160. Trooper Hodgskin opined that "there was definitely something very wrong … [t]his was not just a bad business transaction, this was beyond just shoddy work … I didn't think that they could live there. I thought it was uninhabitable. I don't know how they were staying there, to be honest." *Id*. at 161. Trooper Hodgskin attempted to make contact with Appellant "with no avail." *Id*. at 163. Based on this investigation, a criminal complaint was filed against Appellant.

The Commonwealth then introduced the testimony of two individuals who had prior dealings with Appellant: Mrs. Vernita Gilliam and Mr. Michael McLoughlin.

Mrs. Gilliam testified to being a longtime resident of Colorado. *Id*. at 181. In June 2010, she and her husband hired Appellant, who said he was the owner of "Total Remodeling of Lakewood, Colorado" to paint their home.

*Id*. at 182. After Appellant completed the job, the Gilliams hired Appellant to finish their basement, add a sun porch and complete a patio. *Id*. at 183-184. On June 29, 2010, the Gilliams executed a written contract with Appellant and Total Remodeling for the work and remitted a $25,000.00 down payment. *Id*. at 188-191. Appellant began the project in early September 2010, after which Appellant requested an additional $24,183.50. *Id*. at 193. Although the Gilliams paid Appellant a total of $49,183.50, the work was never completed. *Id*. at 194. Mrs. Gilliam tried to contact Appellant by email and telephone with no success. *Id*. Appellant's workers completed demolition but never began construction. *Id*. at 195, 200. The Gilliams never received a refund and had to hire another contractor to finish the work. *Id*. at 197.

Mr. Michael McLoughlin testified to contacting Appellant and Total Remodeling of Northeast Pennsylvania to complete a "flashing job." *Id*. at 206. According to Mr. McLoughlin, Appellant "walked around [the home] and came back with other problems that he saw that should be rectified." *Id*. at 207. Appellant suggested repairs to Mr. McLoughlin's deck, cellar, and home exterior. *Id*. at 208. Mr. McLoughlin executed a contract with Appellant on May 12, 2011. *Id*. at 210. Mr. McLoughlin gave Appellant his credit card information for payment. *Id*. at 212. Afterwards, the work "sped up and slowed down," but was never completed, and Mr. McLoughlin had to hire another contractor to complete the work. *Id*. at 213-216.

Nonetheless, Appellant charged a total of $105,000.00 to Mr. McLoughlin's credit card. *Id*. at 216. Mr. McLoughlin never received a refund. *Id*. at 217.

Based on the above evidence, the jury found Appellant guilty of home improvement fraud and theft by deception. On February 7, 2014, the trial court sentenced Appellant to consecutive terms of 16 to 32 months of incarceration on each conviction, followed by four years of probation.

The trial court summarized a portion of the somewhat convoluted procedural history that ensued as follows.

> On February 11, 2014, [Appellant] filed a pro se Notice of Appeal. On February 12, 2014, [Appellant's] Trial Counsel, Joseph Yannuzzi, Esquire, filed a Petition for Reconsideration of Sentence. Attorney Yannuzzi subsequently withdrew from the case and [Appellant] was appointed Attorney Robert Sletvold, Esquire, to represent him. On February 17, 2014, Attorney Sletvold filed Post-Sentence Motions on behalf of [Appellant] including a Motion for Arrest of Judgment, Motion for Judgment of Acquittal, Motion for a New Trial and Motion to Modify/Reconsider Sentence. On March 3, 2014, [Appellant] filed a Motion for Post-Conviction Collateral Relief. This Court scheduled a hearing for April 3, 2014 to address the pending motions, the Notice of Appeal and the Motion for Post-Conviction Collateral Relief. At the hearing, Attorney Sletvold represented to this Court that the motion filed by Attorney Yannuzzi was filed to preserve [Appellant's] appellate rights before he withdrew his appearance and Attorney Sletvold was appointed. Attorney Sletvold agreed to withdraw the pending Appeal and asked this Court to proceed with Post-Sentence Motions. [Appellant's initial appeal was discontinued by the Superior Court of Pennsylvania on April 28, 2014 at Appellant's request.]

Trial Court Opinion and Order, 6/3/14, at 1-2.

The trial court denied Appellant's post-sentence motions on June 3, 2014. Appellant filed a timely notice of appeal on July 2, 2014. Both the trial court and Appellant complied with Pennsylvania Rule of Appellate Procedure 1925, with the trial court on August 14, 2014 filing its Rule 1925(a) statement, in which it adopted and incorporated its opinion and order dated June 3, 2014.

Appellant explained that his second appeal was delayed as follows.

> After being granted two extensions of time to file [Appellant's] brief on appeal, Attorney Sletvold failed to file a timely brief, and the Superior Court dismissed the appeal by Order of Court dated March 9, 2015.
>
> On March 1[8], 2015, [Appellant] filed a new PCRA Petition based on prior counsel's failure to timely file a brief in his appeal. Attorney James Brose was appointed to represent [Appellant].

Appellant's Brief at 7.

On May 19, 2015, the trial court issued an order granting Appellant permission to appeal *nunc pro tunc*. Appellant filed the within appeal on June 2, 2015. The parties again have complied with Rule 1925. On June 26, 2015, the trial court filed a Rule 1925(a) statement in which it reiterated its adoption of its opinion and order dated June 3, 2014.

On appeal, Appellant presents a single issue for our review.

> 1. Did the [trial c]ourt abuse its discretion by permitting the testimony, under Pa. Rule of Evidence

> 404(b), of two witnesses who claimed to have had similar experiences with the [A]ppellant as the complainant in this case?

*Id.* at 4.

We begin by noting our well-settled standard of review regarding evidentiary issues.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Fischere***, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83 A.3d 167 (Pa. 2013).

Instantly, on December 23, 2013, the Commonwealth filed notice pursuant to Pennsylvania Rule of Evidence 404(b), in which it stated that it intended to "introduce evidence at trial consisting of evidence of other crimes, wrongs or acts" of Appellant, and that such evidence would "be offered as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident or as otherwise relevant." Notice Pursuant to Pennsylvania Rule of Evidence 404(b), 12/23/14.

This Court recently detailed our analysis under Rule 404(b) as follows.

**Rule 404. Character Evidence; Crimes or Other Acts**

* * *

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

* * *

Pa.R.E. 404(b)(1)-(2). "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez–Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.*** Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005). When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 624 Pa. 143, 84 A.3d 657 (2014), *cert.*

*denied,* ––– U.S. ––––, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

***Commonwealth v. G.D.M., Sr.,*** 926 A.2d 984, 987 (Pa. Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008) (quoting ***Commonwealth v. Smith,*** 431 Pa. Super. 91, 635 A.2d 1086, 1089 (1993)).

*Commonwealth v. Tyson*, 119 A.3d 353, 358-359 (Pa. Super. 2015) (*en banc*).

We note for purposes of our analysis that Pennsylvania Rule of Evidence 404(b), permitting the admission of evidence of prior bad acts for limited purposes, is not restricted to evidence of crimes that have been proven beyond a reasonable doubt in court; it encompasses both prior crimes and prior wrongs and acts, the latter of which, by their nature, often lack definitive proof. *Commonwealth v. Lockcuff*, 813 A.2d 857 (Pa. Super. 2002), *appeal denied*, 825 A.2d 638 (Pa. 2003).

In this case, Appellant asserts that the trial court abused its discretion when it admitted evidence "of two prior customers of [Appellant] because they told a similar story to the victim in this case." Appellant's Brief at 12. Appellant maintains that "there are likely hundreds, if not thousands, of home contractor disputes with the same similarities …." *Id*. at 15. Appellant states as follows.

> The "similarities" among the witnesses' situations and the victim's in this case are so general that they could be applied to almost every homeowner/home contractor dispute. There is nothing distinctive about them and nothing that shows a "signature" of [Appellant]. Moreover, one of the three disputes arose in Colorado so the events cannot be said to be similar geographically and the fact that the disputes occurred over 2 years does not show a common pattern or scheme even though the Trial Court held as much.

*Id*.

Significantly, in the argument section of his brief, Appellant fails to cite to the notes of testimony or otherwise detail his contention that the admitted evidence was not admissible under Pennsylvania Rule of Evidence 404(b). The Commonwealth, on the other hand, specifically counters as follows.

> The evidence and testimony of both Mrs. Gilliam and Mr. McLoughlin establishes a common scheme used by Appellant when he contracted with the Grays. The name of the companies and the contracts used by Appellant were similar to the contract with the Grays. Additionally, Appellant convinced the homeowners to contract with him on additional remodeling around their homes, which Appellant knew he was not capable of completing. Each house was left in a state of disrepair only after a small amount of work was done, and none of the parties were able to get in contact with Appellant. Nevertheless, Appellant took money from Mr. McLoughlin, the Gilliams, and the Grays in the full amount of the contracts or greater, never completed the remodeling contracts, and never returned money for incomplete work. At the time Appellant contracted with the Grays he had the intent to take their money, but had no intention of ever completing the remodeling work. Because similar situations had occurred with Mrs. Gilliam and Mr. McLoughlin, this evidence was properly admitted at trial to show intent, common scheme or plan, and the absence of mistake or accident.

Commonwealth Brief at 17-18.

We agree with the Commonwealth. Likewise, the trial court concluded that the Commonwealth's evidence of Appellant's prior bad acts was relevant and offered the following detailed reasoning.

This Court properly allowed evidence of [Appellant's] prior bad acts through the testimony of Gilliam and McLoughlin. There was credible evidence presented at trial of [Appellant's] prior dealings with customers who contracted with him for home repairs and paid [Appellant] large sums of money only to have [Appellant] start but never finish the work. [] Gilliam testified at trial that she entered into a contract with [Appellant] in 2010 to make repairs to her home in Colorado. Gilliam testified that at [Appellant's] request, she paid twenty-five thousand dollars ($25,000.00) on July 21, 2010 and an additional twenty-four thousand one hundred eighty-three dollars and fifty cents ($24,183.50). The work was started but never completed at her home and her home was left in disrepair, forcing her to hire and pay another contractor to re-do the work.

McLoughlin testified that he entered into a contract with [Appellant] in 2011 to make repairs to his home in Pennsylvania. McLoughlin testified he gave [Appellant] two credit card numbers to make charges when necessary with the amount charged to McLoughlin's credit cards totaling one hundred and five thousand dollars ($105,000.00). Further, McLoughlin testified the work was started but was never completed. McLoughlin's money was never returned to him and he had to hire someone else to fix and finish the repairs.

The credible evidence presented by Gilliam and McLoughlin tended to demonstrate a common plan or scheme by [Appellant] to defraud homeowners. The prior bad acts occurred within two (2) years of the crimes committed in the instant case and the similarities were apparent. Therefore, [Appellant's] prior bad acts were properly admitted into evidence through Gilliam and McLoughlin's testimony. The probative value of this evidence was not outweighed by unfair prejudice. The jury was given the following instruction regarding the prior bad act evidence:

> Ladies and gentlemen of the jury, you heard evidence tending to prove the defendant

committed some improper conduct for which he is not on trial. I'm speaking of the testimony of this last witness. This evidence was before you for a limited purpose, tending to show the absence of mistake, strategic planning, knowledge, opportunity or preparation. This evidence is not to be considered by you in any other way other than for the purpose I just stated. You must not regard this evidence as showing this defendant is a person of bad character or criminal tendencies from which you may be inclined to infer guilt … that same instruction applies to the next witness, also.

(N.T., 1/7/14, pg. 204).

All three victims contacted [Appellant] for home improvement repairs. They each entered into a contract with [Appellant's] company through [Appellant]. In each instance, [Appellant] represented himself as the owner of the company and directed the victims to remit payment to him. [Appellant] asked each victim for additional payment once the job was started, which each victim paid. [Appellant] began the work in each case, but did not complete it and did not return any money to any of the victims. The prior bad acts and the instant charges against [Appellant] were so similar in nature; this Court properly admitted this evidence. Moreover, any prejudice that could have resulted from the admission of the prior bad acts was cured by the limiting instruction given by the Court.

Trial Court Opinion, 6/3/14, at 11-13 (internal citations omitted).

The trial court's reasoning is consistent with both the certified record and applicable legal authority. We thus conclude the trial court did not abuse its discretion in permitting the testimony of Mrs. Gilliam and Mr.

McLoughlin. *See Fischere*, *supra*.[2] Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015

---

[2] To the extent Appellant argues that the Commonwealth's evidence should not have been admitted under Rule 403 because its prejudicial effect outweighed its probative value, we reject that argument as well. Generally, Rule 403 will exclude otherwise admissible evidence where the "probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. As noted by both the parties and the trial court in this case, the jury was provided with a curative instruction relative to Mrs. Gilliam and Mr. McLoughlin's testimony.