J-S63034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DOUGLAS FERRIN | |
| Appellant | No. 1772 EDA 2015 |

Appeal from the Judgment of Sentence April 10, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0007236-2014

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 27, 2016**

Appellant, Douglas Ferrin, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. Appellant challenges (1) the weight of the evidence, (2) the sufficiency of the evidence, and (3) the admission of evidence of a prior crime. We affirm.

The trial court summarized the facts of this case as follows:

> On May 7, 2014, members of the Philadelphia Police and Fire Departments responded to an explosion at 114 West Queen Lane around 4:00 a.m. Upon their arrival, police officers found Appellant outside bleeding profusely from his right hand. In response to the officers' inquiries about what happened, Appellant replied that he had been playing with a firecracker. Detective Timothy Brooks from the Philadelphia Police Bomb Disposal and ATF Arson and Explosive Task Force was called to the scene, followed a trail of blood, and discovered a post—blast scene outside in the rear of the property. Based upon his belief that an improvised explosive device ("IED") had been involved in

---

[*] Former Justice specially assigned to the Superior Court.

the incident as well as information he received from other officers on the scene, the detective entered the residence. Inside the home, he recovered three IEDs and several other materials and objects known to be components of IEDs. Based on these facts, Appellant was charged with: [Weapons of Mass Destruction] WMD, as a Felony in the Second Degree:[1] Arson, as a Felony in the Second Degree:[2] [Causing] a Catastrophe, as a Felony in the Third Degree:[3] and related misdemeanor charges. He was eventually found guilty of WMD and [Possessing Instruments of Crime[4]] PIC.

Trial Ct. Op., 12/15/15, at 1-2.

At trial, Detective Brooks testified to the following regarding his investigation:

[The Commonwealth]: [W]ho did you go with?

A: I originally responded and met Lieutenant Sylvester Burton . . . . He is the assistant fire marshall [sic] in Philadelphia. He was at the scene as well as Officer Daniel Sweeney. . . . I was met by Sergeant Simpson . . . who's also a bomb technical [sic] as well.

Q: And generally, when you get to a site of an explosion, what is your duty?

A: Our duty is to investigate the cause of the explosion, what happened and what circumstances brought [sic] the explosion to happen.

---

[1] 18 Pa.C.S. § 2716(a), (c)(1).

[2] 18 Pa.C.S. § 3301(c)(1).

[3] 18 Pa.C.S. § 3302(a). We note that the trial court indicates he was charged with Risking a Catastrophe. However, the certified record reveals that he was charged with Causing a Catastrophe.

[4] 18 Pa.C.S. § 907(a).

\*    \*    \*

Myself and Lieutenant Burton did a 360, which is where we walk around the area.  When you are conducting an investigation in a post blast you start at the far reaches of the blast scene.

\*    \*    \*

Q: Where did you start?

A: The sidewalk in front of the house.  There was a blood trail coming out of the house.

\*    \*    \*

We walked down the alley way . . . .

As we get to the back there was a significant amount of blood in the back.  There was what I believe to be a homemade smoker you would use to smoke meats or food.  And on top of that there was a piece of plywood with two burn marks in it.  There were pieces of plastic that, in my experience, are similar to components of a [IED].

\*    \*    \*

There was a broken window on the—storm door that was open, and the window was shattered.  There was glass under the window, and there were pieces of human flesh in various spots near the back door and near the wooden smoker.

\*    \*    \*

Q: And about how far from the neighbor's is the smoker?

A: Ten feet.

Q: How far from [Appellant's] house?

A: Ten feet, a foot.

\*    \*    \*

Q: So did you determine where the actual blast site was?

A: Based on my experience, I believe it happened in or near that smoker.

\* \* \*

Q: Now, after checking the backyard, what did you do?

A: . . . I went around to the front, and the front door was . . . locked. When I went from the backyard to the front, I looked in the side window and I could see the dining room table had items on there, including a bottle of alcohol.

In the manufacturing of homemade explosives, alcohol can be used in the manufacturing process.

\* \* \*

Based on the fact that we had been told that he was playing with fireworks—I believe that's the exact term relayed to me—and based on seeing the alcohol and blood going in the house, I contacted the Philadelphia District Attorney's Office. And after confirming with them, I made a warrantless search of the property.

\* \* \*

We walked in through the living room into the dining room, and off to the left there was a sewing machine. On top of the sewing machine, there was a pill bottle, and it had what I believed to be fly paper attached to it. It also has a fuse wick sticking out of the bottom of it, and it was sealed with an epoxy material.

\* \* \*

We found on the dining room table, later in the investigation, we discovered a three-part epoxy, two parts you mix and a hardener.

Q: Now, after making the observations, what did you do next?

A: Based on my experience, that was similar in construction to an [IED].

Q: . . . What do you mean when you say [IED]?

A: It's exactly what it sounds like. An [IED] means it's homemade.

* * *

Every bomb or explosive device has four components, be that a nuclear weapon down to small firecrackers. There's [sic] the same four components. It's like buying a car. Some have a lot [sic] extra than others [sic] cars. You can get different bells and whistles. A nuclear device has a lot of bells and whistles to make it go off. But there's four basic components; a power source, an initiator, an explosive [sic] a container. Those are the four things they have. When you have those four things, you have a bomb or an explosive device.

* * *

[A] bomb can be anything that you fill with an explosive as long as it's contained. If an explosive is contained, it's highly dangerous.

* * *

Q: [I]t seems like you were using [IED] and bomb interchangeably. Are they the same thing or are they different?

A: They're the same thing.

Q: . . . So you see the one device downstairs, and then what did you do next?

A: . . . I secured that item and took it to my vehicle. I have what's known as an A-box. It's basically a chamber for transporting explosive devices.

* * *

- 5 -

We, again, followed the blood trail out and opened up the back door and proceeded to the second floor. . . . In the second floor middle bedroom in a drawer, we observed two more devices.

\* \* \*

It was a tube and one was about six inches long and both were between four and six inches each. They were sealed with glue on either side, and they had a hobby fuse wick coming out [sic] it. They were secured on [sic] my vehicle.

N.T., 2/10/15, at 13-17, 20-27.

After the initial search, they obtained a search warrant to conduct a more thorough search. *Id.* at 28.

Q: Once you obtained the search warrant, at that point, did you back in the house?

A: We did. Several of us that [sic] took part in the search; myself, Sergeant Simpson, Detective Golczewski, one other detective, and three or four ATF agents.

Q: And, now, to do this more, thorough search, what did you do?

A: We broke up into rooms. So one or two individuals took each room of the house and conducted a search in there. All our members of the ATF Explosive Task Force with various different degrees of explosive knowledge and training.

*Id.* at 28-29. They collected a total of 15 different items. *Id.* at 29. They took "device debris," which "look like pieces of burnt plastic." *Id.* at 32. The Commonwealth showed the Detective a photograph of a wooden dowel. *Id.* at 33.

Q: And what did you believe the dowel was used for.

A: We believed it's used in the manufacturing process. . . . [I]t's common in the manufacturing process to use a non-sparking material such as a wooden dowel.

\* \* \*

Q: What is this?

A: That is a packing slip for nitric acid.

Q: What does nitric acid have to do with an explosive device, if anything?

A: It's used in the manufacturing of explosives, specifically, to make TATP, tri acetone tri peroxide. It's one of the ingredients in making two different types of homemade explosives.

\* \* \*

Q: Now, what do we have here?

A. That's a battery pack. The way the batteries are taped together with improvised wires on the top, it doesn't look—to me, that's manufactured. It looks like someone made it themselves. . . .

Q: So what is that coming out [sic] the top of those batteries?

A: They're wires.

Q: And what did you believe that little device to be?

A: I believe it had the potential to be a power source for a [sic] explosive device.

*Id.* at 33-35, 37.

The Commonwealth asked the Detective about the long, short tube.

*Id.* at 40. He testified:

A: [W]hen we recovered the devices on the second floor in the drawer, they initially looked like cardboard tubes, and we found this is a more thorough search. It appears to be poster board or paper board rolled up and treated with epoxy resin and then sliced. . . .

It's hollow inside, which right about [sic] there is a hole drilled in there so that's consistent with where you would insert your hobby fuse wick into that tube on there [sic] filled with black powder and seal both ends. Then you have an IED.

*Id.* at 40. They recovered sulfur powder. *Id.* at 41. He explained that "[j]ust about any homemade explosive is made from household items, items you can legally purchase. But when you put them together, you got a dangerous substance." *Id.* at 42.

The Detective identified a large plastic container, which contained a silver powder. *Id.* at 56. It reacted to heat when it was tested, which meant it was "an energetic material," *i.e.*, explosive. *Id.* The container weighed 16.9 ounces. *Id.* at 57. He explained what happens when an IED explodes:

Q: Now, could you tell if that was a powder inside the explosive device that went off?

A: No.

Q: Why not?

A: The powder—when the device functions, the powder is all assumed [sic].

Q: What do you mean?

A: It all goes [sic] burns up as part of the chemical reaction. So what happens is a rapid chemical reaction,

16,700 feet per second. So it's instantaneous, within a blink of an eye. What happens is it's a tremendous amount of heat, and then a shock wave puts out.

When the explosive goes off, the danger is from the shock waive not the burn from the explosive. When it goes off, it's 660 [sic] degrees in every direction.

\* \* \*

The average speed is about 38 miles an hour, wind speed, and it's pushing, and it's a violent reaction, and it's instantaneous.

**Id.** at 57-58.

The Detective testified that Appellant did not have a federal explosive license or permit and did not possess a State of Pennsylvania license to possess explosives. **Id.** at 61. The Commonwealth showed the Detective "a large length of hobby fuse." **Id.** at 63. He testified that it is used as the initiator for a homemade explosive. **Id.** at 64.

[The Commonwealth]: [C]an you compare the amount of explosives you think are in this device versus what's in the general small firecracker?

A: Fireworks are generalized into two categories, consumer and display or commercial display. The consumer type contains less than 130 milligrams of explosive powder. Consumer are stuff you can buy legally for [sic] 4th of July, the small fireworks. They're very small. They're about an inch in length and maybe a 16th of an inch in diameter . . . . Anything above that is commercial or display.

With those fireworks, you go to the art museum to watch those on [sic] 4th of July. They're handled, produced and manufactured by people who are licensed to do so. They hold a much greater amounts [sic] of explosive powder.

*Id.* at 78.

Shrapnel is not one of the four components of a bomb or an IED. *Id.* at 90. "It's added. It's lights, bells and whistles. You don't need it to make a bomb . . . because the container itself fragments and becomes projectiles." *Id.* "In order to be characterized as a bomb or explosives [sic] device you do not have to have remote activation." *Id.* at 92. Based upon the materials recovered from Appellant's house, the Detective estimated that he could have made "another half a dozen to a dozen" IEDs. *Id.* at 106.

Following a jury trial, Appellant was found guilty of WMD and PIC. On April 10, 2015, Appellant was sentenced to one-and-a-half to three years' imprisonment followed by five years' probation. Appellant filed a post-sentence motion. On May 8, 2015, the court denied the motion. This appeal followed.[5] Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

---

[5] As a prefatory matter, we consider whether the notice of appeal was timely. We note that the May 8th order is not in the certified record. However, the docket memorializes the order, stating as follows:

> Order Denying Post-Sentence Motion
> *Nun pro tunc* filing of the motion accepted 4/20/15
> Defense post sentence motion is denied.

Docket at 15. Appellant's post-sentence motion was filed on April 28, 2015. *Id.* Because the trial court expressly granted Appellant the right to file the post-sentence motion *nunc pro tunc*, we will not find it untimely. *See* ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*) (holding trial court has discretion whether to permit defendant to file

Appellant raises the following issues for our review:

I. Whether there was insufficient evidence to convict . . . Appellant of possessing [WMD] and PIC[6] where there was

_____

post-sentence motion *nunc pro tunc*. If court chooses to permit filing *nunc pro tunc*, it must do so expressly to toll or extend appeal period).

[6] We consider whether Appellant waived his challenge to the sufficiency of the evidence for PIC. Appellant did not raise this issue in his court-ordered Rule 1925(b) statement. In **Commonwealth v. Tyack**, 128 A.3d 254 (Pa. Super. 2015), this Court held:

We are constrained to conclude that [the a]ppellant's sufficiency claim is waived, as [the a]ppellant's Rule 1925(b) statement did not sufficiently identify the error that Appellant intended to challenge on appeal.

As this Court has consistently held:

If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

\* \* \*

The Commonwealth's failure [to object to the defect in the Rule 1925(b) statement] and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim.

***Id.*** at 260–61 (citations omitted); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) (holding "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). In the case *sub judice*, Appellant's Rule 1925(b) statement is devoid of any

- 11 -

insufficient evidence to prove beyond a reasonable doubt that [Appellant] possessed an explosive device for an unlawful purpose, where there was insufficient evidence that . . . Appellant intended to harm others and where the only property damaged was the property belonging to . . . Appellant.

II. Whether . . . Appellant's conviction for possessing [WMD] and PIC was against the weight and credibility of the evidence where a defense expert disputed that the items possessed by . . . Appellant were [WMD] because they did not contain shrapnel, because they were not proven to be operable and because the chain of custody for the evidence had not been preserved.

III. Whether the [c]ourt erred when it admitted evidence of . . . Appellant's prior crime where the [c]ourt instructed the jury that the evidence was introduced for the purpose of showing intent when the intent involved in the prior crime was not analogous to the alleged intent attributed to . . . Appellant in this case.

Appellant's Brief at 6.[7]

_____

reference to the sufficiency of the evidence for PIC.  Therefore, we find it waived.  **See id.**; **Tyack**, 128 A.3d at 260-61.

[7] Appellant also raised the following issue:

Whether the [c]ourt correctly ruled that . . . Appellant could file a Post Sentence Motion *nunc pro tunc* and that . . . Appellant's weight of the evidence claim was preserved where counsel failed to file a timely Post-Sentence Motion but where counsel repeatedly argued during the trial that to convict Appellant was against the weight of the evidence and where counsel repeatedly moved for judgment of acquittal on that basis or, in the alternative, whether the [c]ourt erred when it did not *sua sponte* correct palpable ineffective assistance of counsel evident on the face of the record where after . . . Appellant was sentenced counsel failed to advise . . . Appellant that he had the right to file a Post-Sentence Motion challenging the weight and

First, Appellant claims the evidence was insufficient to convict him of possession of weapons of mass destruction. Appellant contends that the Commonwealth failed to establish that he possessed a bomb used for an unlawful purpose. *Id.* at 20-21. He concedes that "the Commonwealth proved beyond a reasonable doubt that [he] possessed and even manufactured an explosive device having no authority to do so." *Id.* at 21. However, "[t]he Commonwealth did not prove beyond a reasonable doubt that . . . Appellant was using the explosive device for an unlawful purpose." *Id.*

Our review is governed by the following principles: "A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .
>
>         \*     \*     \*
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict

credibility of the evidence within 10 days of the imposition of sentence.

Appellant's Brief at 6-7. We need not address this issue. ***See*** note 5 ***supra.***

winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt. . . .

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235-37 (Pa. 2007)

(citations and quotation marks omitted).

The Pennsylvania Crimes Code provides:

> **(a) Unlawful possession or manufacture.**—A person commits an offense if the person, without lawful authority to do so, intentionally, knowingly or recklessly possesses or **manufactures a weapon of mass destruction**.

18 Pa.C.S. § 2716(a) (emphasis added).[8]  A WMD is statutorily defined as "[a] biological agent, bomb, chemical agent or nuclear agent." ***Id.*** § 2716(i).  A bomb is defined as "[a]n explosive device used for unlawful purposes." ***Id.***

---

[8] We note that Appellant was not charged with violation of Section 2716(b) which provides:

> **(b) Use.**—A person commits an offense if the person, without lawful authority to do so, intentionally, knowingly or recklessly sells, purchases, transports or causes another to transport, delivers or causes to be delivered or **uses a weapon of mass destruction** . . . .

18 Pa.C.S. § 2716(b) (emphasis added).  Appellant's argument would require violation of Section 2716(b) in order to convict a defendant for violation of Section 2716(a).  Such an interpretation is in derogation of the rules of statutory construction.  "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"  1 Pa.C.S. § 1903(a).  "[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" in interpreting a statute.  1 Pa.C.S. § 1922(1).

Instantly, Appellant was not charged with violation of Section 2716(b). Appellant was charged with unlawful possession or manufacture of WMD under Section 2716(a). As Appellant concedes, the evidence was sufficient to convict him of violation of Section 2716(a). **See** 18 Pa.C.S. § 2716(a); **Ratsamy**, 934 A.2d at 1235-37; **Widmer**, 744 A.2d at 751.

Next, Appellant contends his conviction for possessing WMD was against the weight of the evidence.[9] Appellant's Brief at 25.

> This case boiled down to a battle of the experts: Detective Brooks vs. Dr. Steinberg. **It is clear that both experts agreed that the greater weight of the evidence showed that . . . Appellant possessed and**

---

[9] Appellant raised the following issue in his Rule 1925(b) statement:

> The defendant's conviction for possessing weapons of mass destruction was against the weight and credibility of the evidence where a defense expert disputed that the items possessed by the defendant were [WMD] because they did not contain shrapnel, because they were not proven to be operable and because the chain of evidence had not been preserved.

Appellant's 1925(b) Statement, 9/10/15, at 1. Appellant did not raise the issue of the weight of the evidence for PIC. In **Commonwealth v. Griffin**, 65 A.3d 932 (Pa. Super. 2013), the defendant

> did not preserve a weight of the evidence claim through inclusion in his court-ordered Rule 1925(b) Statement, and thus [the trial court's] Rule 1925(a) Opinion does not address it. As such, we find this allegation waived for purposes of appeal.

**Id.** at 938. Similarly, in the case at bar, Appellant did not raise the weight of the evidence claim in relation to his conviction for PIC. The trial court did not address it in its Rule 1925(a) opinion. Therefore, we find it waived. **See id.**; Pa.R.A.P. 1925(b)(4)(vii).

- 15 -

**manufactured exploding devices**. We know that from the fact that a device exploded in . . . Appellant's hand and that inside of . . . Appellant's home were other devices in various states of completion along with components to make additional devices. But the issue in the case is not merely the possession of the devices or the exploding capacity of them. In the case of the [WMD] charge the issue was whether the device was "used for unlawful purposes."

*Id.* (emphasis added).

Our Supreme Court has held that

[a] motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citations omitted).

Instantly, the trial court found no merit to Appellant's claim that the verdict was against the weight of the evidence. Trial Ct. Op. at 5. Appellant's expert, John R. Steinberg, M.D., testified he reviewed the evidence regarding the "three items that were recovered from [Appellant's]

home . . . ." N.T., 2/11/15, at 65. He considered them to be fireworks. *Id.* at 65-66.

> [Defense Counsel]: . . . [W]ith respect to your opinion, whether or not the items recovered in [Appellant's] home are [WMD], what is your opinion?
>
> A: I don't think they were weapons designed to hurt people. **They're certainly capable of mass destruction**. The proof is there, he held the device in his hand when it went off.

*Id.* at 98-99 (emphasis added).

On cross-examination, Dr. Steinberg testified to the following:

> [The Commonwealth]: I know on direct you said bombs are something that could cause damage to property and injury to people; is that correct? Am I characterizing the testimony correctly?
>
> A: Yes.
>
> Q: And I'm not saying this explosive bomb recovered in [Appellant's] home had caused injury to anybody, because it was sitting in there not yet detonated. It could cause damage to property, though, correct?
>
> A: Yes.
>
> Q: It could cause injury to another individual, correct?
>
> A: Yes.

*Id.* at 110.

Appellant concedes he possessed WMD. He does not dispute that both Detective Brooks and Dr. Steinberg agreed that he possessed and manufactured explosive devices. Instantly, the jury's verdict was "not so contrary to the evidence as to shock one's sense of justice." ***See***

***Ramtahal***, 33 A.3d at 609. We discern no abuse of discretion by the trial court. ***See id.***

Lastly, Appellant contends the court abused its discretion when it permitted "the Commonwealth to introduce evidence that [he] blew up a toilet in a bar in Phoenixville in the first place because the evidence was more prejudicial than probative." Appellant's Brief at 30. He argues that

> [c]learly . . . Appellant intended to possess the devices; clearly he intended to construct the devices. That never was the issue surrounding this charge. . . . The issue at hand in this case was whether . . . Appellant constructed a "Bomb," "[a]n explosive device used for unlawful purposes." The introduction of the evidence that . . . Appellant once blew up a toilet in Phoenixville does nothing to advance that inquiry in this case. . . . There was no showing of common intent between that case and this. In that case . . . Appellant arguably retaliated after an argument. That was not the circumstance here. There was absolutely no evidence that . . . Appellant possessed any animus toward anybody or anything. There was no allegation or argument that he did. Since the intent, the only reason [the trial court] allowed the evidence to be presented, in the Phoenixville case bore no relation to the facts in this case, the introduction of that evidence was far more prejudicial than probative of what . . . Appellant's intent was in this case, even if it was the ultimate relevant issue as to the crime of possessing or manufacturing weapons of mass destruction, which it was not.

***Id.*** at 31-32.[10]

---

[10] We note that Appellant contends

> the [c]ourt abused its discretion by *sua sponte* disregarding its own ruling that the evidence could only be considered by the jury with regard to the elements of the

- 18 -

Our review is governed by the following principles:

> [T]he admission into evidence of prior bad acts is within the sound discretion of the trial court, and we will reverse only upon a showing of an abuse of that discretion. Generally, evidence of prior bad acts or unrelated criminal behavior is inadmissible. Evidence of prior bad acts, however, is admissible where it tends to establish malice, motive, or intent for the offense charged.

*Commonwealth v. Stallworth*, 781 A.2d 110, 118 (Pa. 2001) (citations

omitted).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005)

(quotation marks and citations omitted).

Pennsylvania Rule of Evidence 404(b) provides as follows:

---

crime of Arson and that they should "disregard it for the other two charges"; N.T., 2/9/15, 4-5.

Appellant's Brief at 30-31. A review of the record belies this assertion. On February 9th, the trial judge introduced himself to the prospective jurors. N.T., 2/9/15, 4-5. The trial court granted Appellant's motion for acquittal as to arson. N.T., 2/11/15, 49. After the trial court denied Appellant's motion for directed verdict as to WMD and PIC, the court stated: "As far as charges, I'm giving the thing about prior bad acts, that they can't consider that character." *Id.* at 117. Furthermore, Appellant did not object to the charge. N.T., 2/12/15, 17. Therefore any challenge to the charge is waived. *See* Pa.R.A.P. 302(b) (holding only specific exception to charge preserves issue for appeal).

**Rule 404. Character Evidence; Crimes or Other Acts**

\* \* \*

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.Evid. 404(b)(1)-(2).

"It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa. Super. 2004) (*en banc*). Evidence of prior bad acts will be admissible if its probative value outweighs its potential for undue prejudice. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014).

Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence.

*Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007) (quotation marks and citations omitted). "The presumption in our law is that the jury has

followed instructions [of the trial court]." ***Commonwealth v. Robinson***, 864 A.2d 460, 513 (Pa. 2004) (citation omitted).

Although Appellant concedes on appeal that he possessed and manufactured the explosive devices in his brief, at trial, the Commonwealth had to prove that he "intentionally, knowingly or recklessly possesses or manufactures a weapon of mass destruction." 18 Pa.C.S. § 2716(a). The Commonwealth sought to introduce the evidence of the prior bad acts to show that he intended to manufacture WMD in the case *sub judice*.

At trial, Officer Brad A. Dobry testified that he was assigned to the bike patrol in the bar district to monitor the crowd for any disturbance due to a pre Saint Patty's Day bar crawl. N.T., 2/11/15, at 7. He testified:

> I was across the street [from Molly McGuire's Pub], and the manager came over to me stating that someone blew up his bathroom. I went over to the bar. I could see inside the bar, that the fire alarm lights were flashing in the bar. The staff was moving the patrons out of the bar. Myself and another officer were escorted to the men's bathroom on the first floor.
>
> At that point, I observed the toilette and the stall in pieces and shattered on the floor. There were pieces of the porcelain that went into the drywall ceiling. There was a vent fan in the stall which was hanging out of the ceiling, and the lights that were in the ceiling were hanging down.

***Id.*** at 8.

At trial, following an off-the-record side-bar discussion, the trial court gave the following cautionary jury instruction:

> You also heard evidence in this case purporting to show that [Appellant] committed another offense for which he is

- 21 -

> not on trial regarding the testimony regarding the incident in Chester County.[11] You may consider the evidence for a limited purpose, that is to the extent that it helps you to determine his intent in this case. This evidence must not be considered by you in any way other than for the purpose I just stated. Do not regard the evidence as showing [Appellant] is a person of bad character or criminal tendencies for which you might be inclined to infer guilt.

N.T., 2/12/15, at 17.[12]

The trial court found that the prior bad act evidence was admissible because it was probative of Appellant's intent. Trial Ct. Op. at 5-6. The court opined that it "also ensured that the jury would consider the evidence only as it related to Appellant's intent by providing a comprehensive and clear instruction on this issue." *Id.* at 6.

We agree the evidence was admissible because it tended to establish intent for the offense charged. *See Stallworth*, 781 A.2d at 118. The probative value of the evidence outweighed its potential for undue prejudice. *See Hairston*, 84 A.3d at 666; *Dillon*, 925 A.2d at 141. The court gave a cautionary jury instruction that we presume the jury followed. *See Dillon*, 925 A.2d at 141; *Robinson*, 864 A.2d at 513. Regardless, given the overwhelming evidence of guilt, admission of such prior bad act was harmless. *See Commonwealth. v. Hutchinson*, 25 A.3d 277, 300 (Pa. 2011) (citation omitted) (holding even if court erred admitting prior bad act,

---

[11] Phoenixville is in Chester County, Pennsylvania.

[12] We note that Appellant did not object to the instruction.

error harmless given overwhelming evidence of guilt.)  We discern no abuse of discretion by the trial court.  **See Harris**, 884 A.2d at 924.  For all of the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2016