J-S16014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDGARDO SOBRADO-RIVERA | : | |
| | : | |
| Appellant | : | No. 414 MDA 2018 |

Appeal from the Judgment of Sentence August 18, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005882-2016

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                          **FILED JULY 03, 2019**

Edgardo Sobrado-Rivera appeals from the judgment of sentence imposed August 18, 2017, in the Dauphin County Court of Common Pleas. The trial court sentenced Sobrado-Rivera to an aggregate term of life imprisonment, following his jury conviction of first-degree murder, recklessly endangering another person ("REAP"), and firearms not to be carried without a license[1] for the August 2016 shooting death of Henry Liriano-Aquino.  On appeal, he challenges the trial court's admission of certain testimony regarding the victim's text messages, the sufficiency and weight of the evidence supporting his convictions, and court's failure to merge the sentences on two of his convictions.  For the reasons below, we affirm.

_____

[1] **See** 18 Pa.C.S. §§ 2502(a), 2705, and 6106, respectively.

The facts underlying Sobrado-Rivera's convictions are summarized by the trial court as follows:

> At 9:39 p.m. on August 20, 2016, Harrisburg Police Officer Brian Carriere received a dispatch to respond to reports of shots fired and a victim lying on the ground with a gunshot wound to the head. Upon arrival at Hummel and Swatara Streets, Officer Carriere observed a black male lying face down on the ground who had suffered a gunshot wound to the temple. Officer Carriere was unable to detect a pulse. Officer Carriere found no weapon near the victim. A woman was kneeling over the victim. Police later identified the victim as Henry Liriano-Aquino.
>
> Harrisburg Police Officer Cynthia Kreiser also responded to the scene. Officer Kreiser transported the woman, Shaylee Concepcion, to the police station to be interviewed. Ms. Concepcion stated that she was in a nearby store with her child when she heard shots and ran outside. Ms. Concepcion stated that she picked up the victim's phone because she was concerned that someone would pick it up. She then placed the phone back on the street near the victim and called 911 from her own phone.
>
> Harrisburg Police Officer Nicholas Ishman responded to assist with securing the crime scene. Officer Ishman found two nine-millimeter bullet casings six to eight feet from the victim's body.
>
> Forensic Investigator Marc McNaughton found a cell phone and an electronic scale in the victim's vehicle. He found no weapons.
>
> Police interviewed neighbors in the area who reported that they heard three or four gunshots. One neighbor reported that she was on her porch near the scene when she heard the gunshots and saw a silver sedan speed away.
>
> Video surveillance tape captured Roberto Hernandez Garcia's presence at the scene, although he initially denied to police that he witnessed the shooting. Garcia spoke to police after police arrested him for his refusal to cooperate. Ultimately, Garcia gave a statement to police in which he stated that he met Aquino a few days earlier. On the evening of the shooting, they agreed to meet in the area of Hummel and Swatara Streets because Garcia planned to buy marijuana from Aquino and drink with him. When Garcia approached Aquino's vehicle, Aquino told Garcia to wait at the nearby store, because Aquino had to "take care of a problem".

Aquino then left his vehicle, crossed the street and briefly spoke to [Sobrado-Rivera], who was in a vehicle. Garcia could not hear the conversation, but heard Aquino say "stop that shit". Garcia next heard gunshots. Garcia ran from the store, then returned fifteen to twenty minutes later. Garcia unequivocally identified [Sobrado-Rivera] as the shooter.

Forensic pathologist Wayne Ross, M. D., conducted an autopsy of Aquino. Dr. Ross determined that Aquino suffered two gunshot wounds, one to the right side of the head, and the other to the left thigh. Dr. Ross categorized the gunshot wounds as distant, that is, having been fired from a distance of three to four feet or more. Dr. Ross opined that the gunshot wound to the thigh was potentially lethal, and that the gunshot to the head caused the victim's death.

The autopsy further revealed a bullet lodged in the victim's tongue, which Dr. Ross retrieved and provided to police for documentation. Ballistics testing revealed that the bullet was discharged from a nine-millimeter gun and that both nine-millimeter casings found at the scene were discharged from the same weapon.

[Sobrado-Rivera's] former girlfriend, Tiffany Brown, owned the Mitsubishi Eclipse which [Sobrado-Rivera] drove on the night of the shooting. Brown gave police [Sobrado-Rivera's] name as the person who drove her car that night. When Brown told [Sobrado-Rivera] she had spoken to police and wanted her car back, [he] told her she should have reported the car stolen, and that he "could come down and blow her head off".

[Sobrado-Rivera's] wife, Denisse Rivera, testified that on the day of the shooting, while riding in the car with [Sobrado-Rivera] and her son on the way to a family gathering, she saw Aquino drive into their neighborhood, pointing at their vehicle. [Sobrado-Rivera] and Aquino both stopped and exited their vehicles. They had a brief conversation, which Ms. Rivera could not hear. [Sobrado-Rivera] said nothing to his wife about the conversation. Later that evening, after they returned home, Ms. Rivera saw a text message in Spanish on [Sobrado-Rivera's] phone which she believed stated something to the effect that four males would be coming to their house. Ms. Rivera did not see any threats in the text message. When asked about the message, [Sobrado-Rivera] stated, "It's him." [Sobrado-Rivera] then left the house. [Sobrado-Rivera] returned at around 11:00 p.m. that night. He

told his wife that he met up with the guy and that "it didn't go good." Ms. Rivera knew what had occurred, as [Sobrado-Rivera] appeared shaken.

[Sobrado-Rivera] testified that he first met Aquino at a pizza shop ten days before the shooting. The two agreed to do business selling drugs and spoke about prices and supply. Prior to the shooting, Aquino sold [Sobrado-Rivera] 45 to 50 grams of heroin, for which [Sobrado-Rivera] was to pay $5,000, over time. Five or six days after Aquino supplied [Sobrado-Rivera] with the heroin, Aquino began pressuring [Sobrado-Rivera] for payment. [Sobrado-Rivera] told Aquino that he would not be conducting business that week, as he was getting married. Between August 15 and August 20, [Sobrado-Rivera] and Aquino exchanged texts and phone calls. Aquino told [Sobrado-Rivera] that he was receiving pressure for money from people in New York. [Sobrado-Rivera] testified that he began carrying a gun.

After receiving the text from Aquino while at home on August 20, 2016, [Sobrado-Rivera] told Aquino he would meet him at Swatara and Hummel Streets. [Sobrado-Rivera] testified that Aquino told him that he was finished giving him breaks, and was going to call his New York people and send them to [Sobrado-Rivera's] house. [Sobrado-Rivera] testified that Aquino then looked at his phone as if to make a call and stated that he was going to make [Sobrado-Rivera] "a believer." [Sobrado-Rivera] testified that he felt he had no choice other than to shoot him. [Sobrado-Rivera] stated that Aquino did not threaten him and did not have a gun. [Sobrado-Rivera] shot Aquino twice, then got in his car and left.

Sometime in the early hours of the following morning, [Sobrado-Rivera] told his wife that he shot the man they saw earlier that day. Ms. Rivera and [Sobrado-Rivera] drove her child to the child's father's house in Allentown and stayed in a hotel on their return trip to Harrisburg.

On August 26, 2016, while conducting surveillance of [Sobrado-Rivera's] address, Harrisburg Police Sergeant Terry Wealand saw [Sobrado-Rivera] and his wife arrive in separate vehicles. Sergeant Wealand arrested [Sobrado-Rivera] and his wife.

Trial Court Opinion, 9/13/2018, at 2-6 (record citations omitted).

Sobrado-Rivera was charged with criminal homicide, REAP, persons not to possess firearms,[2] and firearms not to be carried without a license. The persons not to possess firearms charge was severed for trial.[3] On August 18, 2017, a jury found Sobrado-Rivera guilty of first degree murder, REAP, and firearms not to be carried without a license. The court immediately sentenced him to a term of life imprisonment on the murder conviction, and concurrent terms of one to two years' imprisonment on each of the remaining offenses. Trial counsel, who had been retained, moved to withdraw. The court granted counsel's request, and appointed new counsel. After receiving two extensions of time, Sobrado-Rivera filed a post-sentence motion on January 16, 2018, challenging the weight of the evidence and the court's failure to merge his sentences for REAP and murder. The trial court denied the motion by order entered February 20, 2018. This timely appeal followed.[4]

Sobrado-Rivera's first two issues concern the testimony of Detective Libertad Ramos. By way of background, Sobrado-Rivera's wife testified she saw a text message, written in Spanish, on her husband's cell phone the day of the shooting. She claimed it said "something about four males coming to

_____

[2] **See** 18 Pa.C.S. § 6106(a)(1).

[3] The record does not reveal the final disposition of this charge.

[4] On March 7, 2018, the trial court ordered Sobrado-Rivera to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Sobrado-Rivera complied with the court's directive, and filed a concise statement on March 22, 2018.

[her] house." N.T., 8/17/2017, at 133. **See also id.** at 140. Sobrado-Rivera told her the message was from the victim. **See id.** at 134. After receiving that message, Sobrado-Rivera left the house to meet the victim, and that is when the shooting occurred. Sobrado-Rivera confirmed that he showed his wife a text message from the victim before leaving their home to confront him. **See id.** at 178. By way of rebuttal, the Commonwealth called Detective Ramos to testify. Detective Ramos, who spoke Spanish, provided her interpretation of the text message at issue. **See id.** at 219-229. The detective testified that, in her opinion, the message was not a threat. Rather, Detective Ramos interpreted the message as follows:

> I have four people that I can't sell to because you have me at a standstill. You need to come on with it and give me what you need – what you need to do. I'm not the one that's the problem. It's the people that are higher up that are giving me pressure.

*Id.* at 220. Sobrado-Rivera was then recalled as a witness, and testified the message meant the victim "was going to send people to my house." *Id.* at 229.

Sobrado-Rivera first argues the court erred when it allowed Officer Ramos to "offer Spanish to English translation testimony to rebut [the] justification defense." Sobrado-Rivera's Brief at 20. Sobrado-Rivera contends Detective Ramos is not a court-certified interpreter, and had a "motivated bias to translate in favor of the Commonwealth." *Id.* at 22. Second, Sobrado-Rivera asserts the Commonwealth's failure to provide an English translation

of the text messages prior to trial constituted a **Brady**[5] violation. **See id.** at 23.

It is well-established that "[t]he admissibility of evidence is within the sound discretion of the trial court, and we will not disturb an evidentiary ruling absent an abuse of that discretion." **Commonwealth v. Arrington**, 86 A.3d 831, 842 (Pa. 2014), *cert. denied*, 135 S.Ct. 479 (U.S. 2014). Moreover, without a contemporaneous objection in the trial court, an allegation of error "is not properly preserved on appeal." **Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1287 (Pa. Super. 2004) (*en banc*). **See also** Pa.R.A.P. 302(a).

Upon our review, we find the trial court thoroughly addressed and properly disposed of Sobrado-Rivera's challenges to the text message translation testimony in its September 13, 2018, opinion. **See** Trial Court Opinion, 9/13/2018, at 8-14 (finding (1) Sobrado-Rivera never requested the "use of a certified interpreter" during the discussion of Detective Ramos' testimony concerning the text messages, and therefore, any objection now is waived;[6] (2) defense counsel acknowledged the text messages at issue were

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963). In order to demonstrate a **Brady** violation, a defendant must prove the Commonwealth suppressed evidence, which is helpful to the defense, and the suppression of the evidence prejudiced the defendant. **See Commonwealth v. Brown**, 196 A.3d 130, 172–173 (Pa. 2018)

[6] Trial Court Opinion, 9/13/2018, at 14.

"almost certainly provided [by the Commonwealth in the course of discovery,] but that in the thousands of pages of evidence, [counsel] simply did not review that particular information with [Sobrado-Rivera;]"[7] and (3) "no proof existed of a failure by the Commonwealth to produce the text message evidence in its entirety to the defense.").[8] Accordingly, we rest on the court's well-reasoned basis.[9]

Next, Sobrado-Rivera contends the evidence was insufficient to sustain his conviction of first-degree murder because the Commonwealth failed to disprove his justification defense beyond a reasonable doubt.[10] *See* Sobrado-Rivera's Brief at 27. He argues 18 Pa.C.S. § 503 "provides a justification for conduct that would otherwise constitute an offense," so long as the justification is based upon a "real emergency" where the harm is "readily apparent." *Id.* Sobrado-Rivera insists he did not possess the specific intent to kill the victim; rather, the evidence showed he "had no choice but to shoot"

---

[7] *Id.* at 13.

[8] *Id.* at 12.

[9] We note, too, defense counsel's purported surprise at the introduction of the text messages, and the Commonwealth's translation of them, is somewhat disingenuous. As noted *supra*, prior to Detective Ramos' testimony, both Sobrado-Rivera and his wife testified that the victim sent Sobrado-Rivera a text message in Spanish indicating he intended to send four men to their home. *See* N.T., 8/17/2017, at 133, 139-140, 178. Detective Ramos' testimony was offered in rebuttal to provide a different interpretation of the meaning of that text message.

[10] We have reordered Sobrado-Rivera's claims for ease of disposition.

the victim to stop him from sending people to his house to hurt his wife and stepson. *Id.* at 31. He maintains the potential harm to his family was real based on the victim's repeated threats to send four men to his home. *See id.* at 32.

Our standard of review is well-established:

Evidence legally is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to enable a reasonable fact-finder to find all of the elements of first-degree murder beyond a reasonable doubt. In conducting this inquiry, we must evaluate the entire trial record. In addition, "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence."

*Commonwealth v. Clemons*, 200 A.3d 441, 462 (Pa. 2019) (internal citations omitted).

In order to convict a defendant of first-degree murder, the Commonwealth must prove "a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011), *cert. denied*, 526 U.S. 1247 (2012). *See also* 18 Pa.C.S. § 2502(a). The Commonwealth may satisfy its burden of proof by circumstantial evidence. *See Houser*, *supra*, 18 A.3d at 1133. Moreover, the fact finder may infer the defendant acted with both malice and a specific intent to kill when he uses a deadly weapon on a vital part of the victim's body. *See id.* at 1133-1134 (quotation omitted).

In the present case, Sobrado-Rivera admitted he shot the unarmed victim twice. *See* N.T., 8/17/2017, at 203-207. However, he claimed he did not intend to kill the victim; rather, he intended to protect his family, and "to stop whatever [the victim] was going to do to send people to [his] house." *Id.* at 206. He insists his actions were justified pursuant to 18 Pa.C.S. § 503. Sobrado-Rivera's reliance on this statute is misplaced.

Section 503 of the Crimes Code provides, in relevant part:

(a) General rule.--Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S. § 503(a). A Section 503 justification defense was not available to Sobrado-Rivera. First, the harm Sobrado-Rivera "sought to be avoided" was the assault or murder his wife and stepson. *See* 18 Pa.C.S. § 503(a)(1). However, to prevent that crime, he shot and killed the victim. Therefore, pursuant to Subsection 503(a)(1), the "harm sought to be avoided" (*i.e.*, the assault or murder of his family) was not "greater than" the harm he caused (*i.e.*, the murder of the victim). *Id. See Commonwealth v. Pelzer*, 612 A.2d 407, 415 (Pa. 1992) (holding defendant was not entitled to justification

charge because "[t]he harm [he] allegedly sought to avoid by shooting [the victim], namely, his own injury or death, was not greater than the harm sought to be prevented by the law against murder, namely, the death of the victim."). Moreover, pursuant to Subsection 503(a)(2), the Crimes Code provides a defense "dealing with the specific situation involved." 18 Pa.C.S. § 503(a)(2). Section 506(a) permits a person to use force, under certain circumstances, for the protection of others. *See* 18 Pa.C.S. § 506(a). Accordingly, the justification defense set forth in Section 503 was not available to Sobrado-Rivera.

Rather, Sobrado-Rivera is attempting to defend his actions based upon Section 506. *See* 18 Pa.C.S. § 506 ("Use of force for the protection of other persons"). However, the use of force in that situation is justifiable only if such force would be justifiable for the actor to protect himself, that is, self-defense pursuant to 18 Pa.C.S. § 505. *See* 18 Pa.C.S. § 506(a)(1). Section 505(b)(2) provides, in relevant part:

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
>> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
>>
>> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

- 11 -

18 Pa.C.S. § 505 (b)(2).

Here, the trial court concluded "[t]he evidence proved that [Sobrado-Rivera] left his home with a gun, did not contact police, sought out [the victim], then shot him twice although he did not see any weapon on [the victim]." Trial Court Opinion, 9/13/2018, at 8. Our review of the record reveals ample support for the court's findings. Furthermore, it is undisputed Sobrado-Rivera confronted the victim on a public street, and, therefore, could have retreated from the confrontation. His testimony that he did not intend to kill the victim, although he shot him a second time after wounding him the first time, simply does not ring true. Accordingly, Sobrado-Rivera's sufficiency claim fails.

Sobrado-Rivera also challenges the weight of the evidence supporting his conviction of first-degree murder.[11]  *See* Sobrado-Rivera's Brief at 32. When we review a challenge to the weight of the evidence, our review is limited to the "trial court's exercise of discretion." *Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019) (quotation omitted).  Indeed,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.  The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility.

_____

[11] We note Sobrado-Rivera properly preserved this claim by raising it in a timely filed post-sentence motion.  *See* Pa.R.Crim.P. 607(A)(3); Defendant's Post Sentence Motion Pursuant to Pa.R.Crim.P. 720, 1/16/2018, at ¶ 4.

*Id.* (internal punctuation and citations omitted).

> Moreover, when a trial court finds that the evidence was not against the weight of the evidence, we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that "had the opportunity to hear and see the evidence presented." Furthermore, a defendant will only prevail on a challenge to the weight of the evidence when the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

*Commonwealth v. Cramer*, 195 A.3d 594, 600–601 (Pa. Super. 2018) (internal citations omitted).

Sobrado-Rivera maintains the trial court abused its discretion in denying his challenge to the weight of the evidence by failing to consider the following evidence: (1) Concepcion "admitted to manipulating" the victim's cell phone, but "was never called as a witness by the Commonwealth[;]" (2) Commonwealth witness, Garcia, initially lied to the police and only offered a statement after he was charged with hindering prosecution; and (4) the victim had "alcohol and cocaine in his system at the time of the incident and the ability and opportunity to use his cellular telephone to make good on his threat." Sobrado-Rivera's Brief at 33-34. He also asserts the trial court improperly considered Officer Ramos' testimony translating the Spanish text messages. *See id.* at 34.

In addressing Sobrado-Rivera's weight of the evidence claim, the trial court opined:

> The jury heard ample and compelling evidence upon which it could easily conclude that [Sobrado-Rivera] shot [the victim] with a specific intent to kill. [Sobrado-Rivera] left his home with a gun and a plan to confront [the victim]. [Sobrado-Rivera] admitted at

- 13 -

trial that he decided, in the moment of confrontation, that he was going to shoot the unarmed [victim] because of the perceived threat. He fired upon [the victim] twice in quick succession from a few feet away. The first bullet traveled through the victim's thigh and the second lodged into his face. Dr. Ross opined that the gunshot to the thigh was potentially deadly and that the shot to the head killed the victim. Therefore, the weight of the evidence supports the verdict.

Trial Court Opinion, 9/13/2018, at 16 (record citations omitted).

We find no basis to disagree. With regard to Sobrado-Rivera's specific claims, we have already concluded the trial court did not err in permitting Officer Ramos to testify regarding her translation of the relevant text messages. Moreover, the trial court found "[n]o evidence exists that Ms. Concepcion tampered with evidence in any manner[,]" and while Garcia initially denied having witnessed the shooting, "[d]efense counsel thoroughly cross[-]examined [him] regarding alleged inconsistencies." *Id.* at 7-8. Although Garcia was the only witness who identified Sobrado-Rivera as the shooter, it merits emphasis that Sobrado-Rivera **admitted** he shot the victim, albeit with the intent to protect his family. Finally, Sobrado-Rivera fails to explain how the fact the victim had alcohol and cocaine in his system undermines the verdict. Accordingly, we conclude the trial court did not abuse its discretion when it denied Sobrado-Rivera's post-sentence motion challenging the weight of the evidence.

Lastly, Sobrado-Rivera argues the trial court erred when it failed to merge his sentence for REAP with his sentence for first-degree murder. *See* Sobrado-Rivera's Brief at 25.

> Initially, we note that merger is a nonwaivable challenge to the legality of the sentence. **Commonwealth v. Robinson**, 931 A.2d 15, 24 (Pa. Super. 2007). The issue is a pure question of law, allowing for plenary review. **Id.**

**Commonwealth v. Pettersen**, 49 A.3d 903, 911 (Pa. Super. 2012), *appeal*

*denied*, 63 A.3d 776 (Pa. 2013).

The merger of offenses for purposes of sentencing is controlled by 42

Pa.C.S. § 9765, which states:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Rather than interpreting his conviction under the merger

statute, Sobrado-Rivera relies upon case law decided before its enactment in

2012, which this Court has found is no longer instructive. **See**

**Commonwealth v. Coppedge**, 984 A.2d 562, 564 (Pa. Super. 2009).

Nevertheless, the trial court concluded "[t]he doctrine of merger does not

apply to bar imposition of a separate sentence for the crime of [REAP]." Trial

Court Opinion, 9/13/2018, at 16. We agree.

A person is guilty of REAP if he "recklessly engages in conduct which

places or may place another person in danger of death or serious bodily

injury." 18 Pa.C.S. § 2705. A person is guilty of first-degree murder if he

commits an "intentional killing." 18 Pa.C.S. § 2502(a). An "intentional killing"

is "any kind of willful, deliberate and premeditated killing." 18 Pa.C.S. §

2502(d). The argument could be made that when a defendant commits an

intentional killing, he "recklessly engages in conduct which places [the victim]

- 15 -

in danger of death." 18 Pa.C.S. § 2705. However, we conclude merger is inappropriate here since the victims of the crime are not the same. Indeed, Liriano-Aquino was the victim of the murder. However, on the criminal information, the Commonwealth averred Sobrado-Rivera committed the crime of REAP by "recklessly engag[ing] in conduct which placed or may have placed **people in the area of the shooting** in danger of death or serious bodily injury[.]" Criminal Information, 4/3/2017, at Third Count (emphasis supplied). The court repeated this in its jury instructions:

> The defendant is also charged with recklessly endangering another person. To find the defendant guilty of this offense, you must find the defendant recklessly did something that placed or may have placed someone in danger of death or serious bodily injury. In this case, the Commonwealth asserts by their criminal information that **the people and residents who were in the vicinity of that area** when he fired -- allegedly fired the gun were placed in danger.

N.T., 8/18/2017, at 315 (emphasis supplied). Accordingly, Sobrado-Rivera was not charged with recklessly endangering the victim, but rather, with recklessly endangering other residents in the area at the time of the shooting. The Pennsylvania Supreme Court has held "the imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized and, consequently, does not violate the double jeopardy clause of the Fifth Amendment." **Commonwealth v. Frisbie**, 485 A.2d 1098, 1101 (Pa. 1984). Therefore, we find the trial court did not err when it failed to merge Sobrado-Rivera's convictions for sentencing purposes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2019