J-S42011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL L. GREEN | : | |
| | : | |
| Appellant | : | No. 266 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 16, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002525-2020

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:             **FILED: JANUARY 22, 2025**

Michael L. Green appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Dauphin County, following his conviction of one count of strangulation.[2]  After careful review, we affirm.

On June 30, 2020, Green went to the residence of his former paramour, Stacey Scott-White, and Green and Scott-White discussed when Green would retrieve his personal belongings.[3]  Ultimately, the two agreed that Green would retrieve his belongings the following day and left Scott-White's home.

_____

[1] We observe that the trial court imposed Green's judgment of sentence for offenses on three separate dockets, including the instant docket.  ***See*** Sentencing Order, 1/16/24, at 1-3 (unpaginated).  However, Green has only appealed his sentence as to the above-captioned docket.

[2] 18 Pa.C.S.A. § 2718(a)(1).

[3] Green and Scott-White had been in an intimate relationship, which ended sometime in 2018.  ***See*** Trial Court Opinion, 4/30/24, at 1.

Green returned, as agreed, and Scott-White told him to get his things and leave. As Scott-White turned to enter her living room, Green pushed her onto a recliner and began to choke her with both hands. Scott-White was unable to breathe during this time. At some point, Scott-White was able to gasp for air and call for her niece,[4] who was upstairs in the home. Scott-White's niece came downstairs and Green jumped away, apologized, and fled the home. Scott-White called 9-1-1.

Detective Andrew Bath of the Harrisburg Bureau of Police responded to Scott-White's house and took her statement. Detective Bath observed that Scott-White's neck was red and bruised. Police officers photographed the bruising on Scott-White's neck. While police were at Scott-White's home, Green called Scott-White repeatedly and asked why she had called the police. Scott-White handed the phone to Detective Bath, who asked Green to return and provide his account of what had transpired. Green declined and did not return to Scott-White's house.

On June 23, 2020, the Commonwealth filed the above-mentioned charge of strangulation against Green. After a preliminary hearing, at which the charges were held for trial, Green failed to appear for numerous trial court dates. As a result, the trial court issued several bench warrants.

---

[4] Scott-White's niece's name does not appear in the certified record before this Court and she did not testify at trial. Consequently, we refer to her as "Scott-White's niece" throughout this memorandum.

Ultimately, Green proceeded to a jury trial on November 2, 2022. The morning of trial, Green orally raised a motion *in limine*, seeking to preclude the Commonwealth's admission of the 9-1-1 audio recording. **See** N.T. Jury Trial, 11/2/22, at 7-9. Green argued that, while the audio recording did not mention any prior arrests, he was concerned that Scott-White mentioned to the 9-1-1 operator that Green had prior interactions with police. **See id.** at 7-8. The trial court denied Green's motion as "untimely" and stated that "[a]t this point [it is] impractical [to redact]." **Id.** at 8. Additionally, the trial court concluded that, even if the motion had been "timely," there was "nothing there that [] can't [be cleared] up on cross-examination since [Scott-White] and the 9-1-1 tape will be available for cross[-examination]." **Id.** at 8-9. Ultimately, the jury convicted Green of one count of strangulation.

The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. Again, Green absconded from multiple sentencing hearing dates until January 16, 2024, when the trial court sentenced Green to a period of five to ten years' incarceration. Green did not file post-sentence motions.

Green filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Green now raises the following claim for our review: "Whether the trial court abused its discretion when [it] refused to exclude impermissible Pa.R.E. 404(b) prior bad acts from a 9[-]1[-]1 call, when the [trial c]ourt had ample opportunity to

listen to the [four-]minute 9[-]1[-]1 call and decide [] its admissibility prior to trial?"  Brief for Appellant, at 6.

Green raises two challenges to the trial court's ruling, which we address separately.  First, Green argues that the trial court erred, as a matter of law, by concluding that his oral motion *in limine* was "untimely," as there is no provision in the Rules of Criminal Procedure providing a deadline to file a motion *in limine*.  **See** Brief for Appellant, at 12-18.  Green further contends that the defense enjoys the ability to file its motions *in limine* on the eve of trial, and even the morning of trial, in order to gain a strategic advantage over the Commonwealth.  **See id.**

> A motion *in limine* is a pre-trial application before a trial court made outside the presence of a jury, requesting a ruling or order from the trial court prohibiting the opposing counsel from referring to or offering into evidence matters so highly prejudicial to the moving party that curative instructions cannot alleviate an adverse effect on the jury.  The purpose of a motion *in limine* is twofold:  1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion.  Further, a ruling on a pre-trial motion *in limine* provides counsel with a basis upon which to structure its trial strategy.

**Commonwealth v. Noll**, 662 A.2d 1123, 1125 (Pa. Super. 1995).

Pennsylvania Rule of Criminal Procedure 578 provides that "all pretrial requests for relief shall be included in one omnibus motion . . . [but t]he omnibus pretrial motion rule is not intended to limit other types of motions,

oral or written, made pretrial or during trial, **including those traditionally called motion[s]** *in limine*, which may affect the admissibility of evidence[.]" Pa.R.Crim.P. 578 (emphasis added). However the Rule **encourages** the "earliest feasible submissions and rulings on [motions *in limine*]." *Id.* Further, we observe that, generally, Pa.R.Crim.P. 579 provides that **omnibus pretrial motions** be filed within 30 days of arraignment. *See* Pa.R.Crim.P. 579(A).

Here, Green made an oral motion *in limine* challenging the admissibility, under Rule 404(b), of the 9-1-1 audio recording. *See* N.T. Jury Trial, 11/2/22, at 7-10. Green made his challenge after *voir dire*, and mere minutes before trial was slated to begin. *See id.* at 7. Initially, the trial court discerned that the motion was "untimely" because trial was imminent, there was not enough time to redact the audio recording before trial began, and Green had been in possession of the 9-1-1 audio recording for a month. *See id.* at 8-9; *see also* Trial Court Opinion, 4/30/24, at 4 (Green had possession of 9-1-1 recording for one month, but waited until last moment to raise challenge and caused potential undue delay).

To the extent that Green argues the trial court erred in ruling that his motion *in limine* was "untimely," we are constrained to agree. Indeed, there is nothing in our Rules of Criminal Procedure that places any filing deadline on a motion *in limine*, other than the challenge therein being raised prior to the introduction of evidence sought to be precluded. *Cf. Commonwealth v.*

*Libengood*, 152 A.3d 1057, 1059-61 (Pa. Super. 2016) (motion *in limine* that was more properly construed as request for Bill of Particulars was untimely filed under Pa.R.Crim.P. 572). Furthermore, Rule 578 excludes motions *in limine* from the filing requirements of an omnibus pretrial motion. **See** Pa.R.E. 578 (Rule 578 does not require motions *in limine* be filed within an omnibus pretrial motion). Furthermore, **Libengood** is not controlling here because in that case the defendant used the motion *in limine* as an improper vehicle in an attempt to litigate an otherwise untimely motion. **See Libengood**, **supra**. Consequently, we are constrained to conclude that the trial court erred in concluding that Green's motion *in limine* was "untimely."

Nevertheless, here, the trial court did address the merits of Green's motion *in limine*, and, as discussed **infra**, we discern no abuse of discretion. Consequently, in light of our disposition, the purported "untimeliness" of Green's motion *in limine* is moot.[5]

In his second challenge, Green argues that the trial court abused its discretion in concluding that his motion *in limine* lacked merit where the 9-1-1 call referenced Green's prior encounters with police, which constituted impermissible character evidence in violation of Rule 404(b), and prejudiced

---

[5] Furthermore, while the defense may enjoy some "strategic advantage" in filing its motions *in limine* closer to the start of trial, it may be prudent for counsel to file such motions *in limine* so that there is enough time for a trial court to grant the requested relief. **See** Pa.R.E. 578 ("The earliest feasible submission and rulings on [motions *in limine*] are encouraged.").

Green. *See id.* at 12-26. Green frames these "prior encounters" as "prior criminal actions," which are precluded under Rule 404(b). *See id.* at 19. Green relies upon *Commonwealth v. Ross*, 57 A.3d 85 (Pa. Super. 2012),[6] and argues that the trial court abused its discretion in admitting the evidence because it constituted prior acts of abuse. *See* Brief for Appellant, at 21-23. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). Pursuant to Pa.R.E. 401, evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of

---

[6] We note that the defendant in *Ross* was charged and tried for first-degree murder after killing of a woman he had met at a bar. *See id.* at 87-88. There, the Commonwealth sought to introduce Rule 404(b) evidence, **through the defendant's prior romantic partners**, that he was violent in **those relationships**. *See id.* at 98-104.

consequence in determining the action." Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." **Drumheller**, 808 A.2d at 904. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

* * *

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses*. Evidence of a crime, wrong[,] or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

"[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.*** Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, or identity, or absence of mistake or accident. ***Commonwealth v. Chmiel***, 889 A.2d 501, 534 (Pa. 2005). When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 84 A.3d 657, 664-65 (Pa. 2014).

However, "mere passing references to prior criminal activity will not necessarily require reversal unless the record illustrates that prejudice results." ***Commonwealth v. Sattazahn***, 631 A.2d 597, 608 (Pa. Super. 1993). Unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the [fact-finder]'s attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007).

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the [fact-finder]'s consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

> Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque or highly prejudicial.

*Id.* Thus, "[w]hen the Commonwealth introduces evidence [that] does not directly establish [a defendant's other] criminal conduct, but which is **merely suggestive** of it, the operative question is whether the jury could reasonably infer from the facts presented that the accused had engaged in [other] criminal activity." *Commonwealth v. Edwards*, 762 A.2d 382, 388 (Pa. Super. 2000) (citation omitted). Generally, in domestic abuse cases, evidence of prior abuse between the parties is "admissible to establish motive, intent, malice, or ill-will." *Commonwealth v. Ivy*, 146 A.3d 241, 251-52 (Pa. Super. 2016).

Instantly, Scott-White can be heard, on the challenged portion of the 9-1-1 audio recording, stating: "And I had the police out here about a year-and-a-half ago to put him out of here then." Commonwealth Exhibit 1 (9-1-1 Audio Recording), at 01:51-01:55. The recording is 4 minutes and 32 seconds in length, and no other portion of the audio references any prior acts by Green.

It is clear that the jury heard this recording in its entirety. *See* N.T. Jury Trial, 11/2/22, at 32-36 (wherein 9-1-1 audio recording was played for jury and admitted as Commonwealth Exhibit 1). However, aside from listening to the four-minute recording, there is no mention of the challenged portion at trial. Neither Scott-White nor Detective Bash, the only two Commonwealth witnesses at trial, testified regarding any prior instances of alleged criminal

- 10 -

conduct. In fact, there was no testimony or evidence regarding any prior instances of abuse between Green and Scott-White. Consequently, the facts of this case are not synonymous with those of *Ross*, and we are unpersuaded by Green's reliance upon it.[7]

Moreover, the trial court prohibited the Commonwealth from referencing Green's prior incarcerations and convictions. *See* N.T. Jury Trial, 11/2/22, at 5. Thus, the jury heard only the above-described singular reference that Green and Scott-White had a prior encounter that resulted in Scott-White calling the police to "put him out of here." *See* Commonwealth Exhibit 1 (9-1-1 Audio Recording); at 01:51-01:55. Such a passing reference is, at best, "merely suggestive" of prior criminal activity. *See Edwards*, *supra*. Indeed, a mere reference to Scott-White calling the police does not suggest that Green had engaged in prior criminal activity. *See id.* Furthermore, we observe that this reference does not run afoul of the trial court's prohibition on referring to

---

[7] As mentioned *supra*, the facts of *Ross* are significantly different from the instant case. There, the Rule 404(b) evidence admitted by the Commonwealth came from three former paramours, who testified about the violence committed against them, not the violence against the deceased victim. *See Ross*, 57 A.3d at 98-104. Moreover, the Commonwealth introduced significant evidence that tended only to show defendant's character trait of being a domestic abuser. *See id.* at 104 ("prior bad acts testimony demonstrated that [defendant] was a domestic abuser of women with whom he was involved in on-going romantic relationships"). It is sufficient to say that the evidence adduced in *Ross* was of such a significant magnitude that the instant, four-second, passing reference to an undescribed prior interaction cannot be characterized as being of similar gravity. For these reasons, we decline to conclude that *Ross* controls our analysis.

Green's prior incarcerations and convictions. ***See id.*** at 388 (testimony defendant had been in prior scuffle with victim and victim later called police did not reference defendant's prior criminal charges or arrest). Accordingly, Green is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/22/2025